# EXHIBIT A



# **AIA**® Document A134™ – 2009

## *Standard Form of Agreement Between Owner and Construction Manager as Constructor* where the basis of payment is the Cost of the Work Plus a Fee without a Guaranteed Maximum Price

| **AGREEMENT** made as of the First day of  December in the year Two Thousand Fourteen *(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status and address)*

Premier Exhibitions
3340 Peachtree Rd., NE, Suite 900
Atlanta, GA   30326
Attn:   Michael Little

and the Construction Manager:
*(Name, legal status and address)*

Structure Tone, Inc.
770 Broadway,  9th fl.
New York, NY   10003

for the following Project:
*(Name and address or location)*

Premier Exhibits
417 Fifth Ave., Basement, 1st, Mezzanine & 2nd fls.
Conversion of Shell Space into Exhibition Space on 1st, Mezzanine & 2nd fls.
New York, NY

The Architect:
*(Name, legal status and address)*

Gensler
1230 Ave. of the Americas
New York, NY   10003

The Owner's Designated Representative:
*(Name, address and other information)*
Premier Exhibitions
3340 Peachtree Rd., NE, Suite 900
Atlanta, GA   30326
Attn:   Michael Little

The Construction Manager's Designated Representative:
*(Name, address and other information)*
Structure Tone, Inc.
770 Broadway, 9th fl.
New York, NY   10003
Attn: Karl Anoushian

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.



AIA Document A134™ – 2009 (formerly A131™CMc –2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**® **document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726687_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                          (1483817266)

1

The Architect's Designated Representative:
*(Name, address and other information)*
Gensler
1230 Ave. of the Americas
New York, NY   10003
Attn: Thomas Turner

The Owner and Construction Manager agree as follows.



Init.

/

AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                   (1463617265)

**2**

| TABLE OF ARTICLES

1    GENERAL PROVISIONS

2    CONSTRUCTION MANAGER'S RESPONSIBILITIES

3    OWNER'S RESPONSIBILITIES

4    COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

5    COMPENSATION FOR CONSTRUCTION PHASE SERVICES

6    COST OF THE WORK FOR CONSTRUCTION PHASE

7    PAYMENTS FOR CONSTRUCTION PHASE SERVICES

8    INSURANCE AND BONDS

9    DISPUTE RESOLUTION

10    TERMINATION OR SUSPENSION

11    MISCELLANEOUS PROVISIONS

12    SCOPE OF THE AGREEMENT

**ARTICLE 1   GENERAL PROVISIONS**
**§ 1.1 The Contract Documents**
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to the execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement, all of which form the Contract and are as fully a part of the Contract as if attached to this Agreement or repeated herein. Upon the Owner's approval of the Control Estimate, the Contract Documents will also include the documents described in Section 2.2.4 and revisions prepared by the Architect and furnished by the Owner as described in Section 2.2.5. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern.

**§ 1.2 Relationship of the Parties**
The Construction Manager accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Construction Manager's skill and judgment in furthering the interests of the Owner; to furnish efficient construction administration, management services and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish or approve, in a timely manner, information required by the Construction Manager and to make payments to the Construction Manager in accordance with the requirements of the Contract Documents.

**§ 1.3 General Conditions**
For the Preconstruction Phase, AIA Document A201™–2007, General Conditions of the Contract for Construction, shall apply only as specifically provided in this Agreement. For the Construction Phase, the general conditions of the contract shall be as set forth in A201–2007, which document is incorporated herein by reference. The term "Contractor" as used in A201–2007 shall mean the Construction Manager.

**§ 1.4 Contract Sum, Contract Time and Changes in the Work**
The Contract Sum is the actual Cost of the Work as defined in Section 6.1.1 plus the Construction Manager's Fee as defined in Section 5.1. The Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work as certified by the Architect in accordance with



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:47 on 07/06/2015 under Order No.7705720087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                    (1483817288)

Init.

3

Section 9.8 of AIA Document A201–2007. The Contract Time shall be measured from the date of commencement of the Construction Phase as established pursuant to Section 2.3.1.2 of this Agreement. Changes in the Work shall be governed by Section 5.2 of this Agreement and not by Article 7 of A201–2007. If, however, the Contract Time has been established in accordance with Section 2.2.4.5, Article 7 of A201–2007 shall control adjustments to the Contract Time.

## ARTICLE 2    CONSTRUCTION MANAGER'S RESPONSIBILITIES

The Construction Manager's Preconstruction Phase responsibilities are set forth in Sections 2.1 and 2.2. The Construction Manager's Construction Phase responsibilities are set forth in Section 2.3. The Owner and Construction Manager may agree, in consultation with the Architect, for the Construction Phase to commence prior to completion of the Preconstruction Phase, in which case, both phases will proceed concurrently. The Construction Manager shall identify a representative authorized to act on behalf of the Construction Manager with respect to the Project.

### § 2.1 Preconstruction Phase
§ 2.1.1 The Construction Manager shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other.

### § 2.1.2 Consultation
The Construction Manager shall schedule and conduct meetings with the Architect and Owner to discuss such matters as procedures, progress, coordination, and scheduling of the Work. The Construction Manager shall advise the Owner and the Architect on proposed site use and improvements, selection of materials, and building systems and equipment. The Construction Manager shall also provide recommendations consistent with the Project requirements to the Owner and Architect on constructability; availability of materials and labor; time requirements for procurement, installation and construction; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, life-cycle data, and possible cost reductions.

§ 2.1.3 When Project requirements in Section 3.1.1 have been sufficiently identified, the Construction Manager shall prepare and periodically update a Project schedule for the Architect's review and the Owner's acceptance. The Construction Manager shall obtain the Architect's approval for the portion of the Project schedule relating to the performance of the Architect's services. The Project schedule shall coordinate and integrate the Construction Manager's services, the Architect's services, other Owner consultants' services, and the Owner's responsibilities and identify items that could affect the Project's timely completion. The updated Project schedule shall include the following: submission of the Control Estimate; the components of the Work; times of commencement and completion required of each Subcontractor; ordering and delivery of products, including those that must be ordered well in advance of construction; and the occupancy requirements of the Owner.

### § 2.1.4 Phased Construction
The Construction Manager shall provide recommendations with regard to accelerated or fast-track scheduling, procurement, or phased construction. The Construction Manager shall take into consideration cost reductions, cost information, constructability, provisions for temporary facilities and procurement and construction scheduling issues.

### § 2.1.5 Preliminary Cost Estimates
§ 2.1.5.1 Based on the preliminary design and other design criteria prepared by the Architect, the Construction Manager shall prepare preliminary estimates of the Cost of the Work or the cost of program requirements using area, volume or similar conceptual estimating techniques for the Architect's review and Owner's approval. If the Architect or Construction Manager suggests alternative materials and systems, the Construction Manager shall provide cost evaluations of those alternative materials and systems.

§ 2.1.5.2 As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Construction Manager shall prepare and update, at appropriate intervals agreed to by the Owner, Construction Manager and Architect, estimates of the Cost of the Work of increasing detail and refinement and allowing for the further development of the design until such time as the Construction Manager submits a Control Estimate for the Work, pursuant to Section 2.2. Such estimates shall be provided for the Architect's review and the Owner's approval. The Construction Manager shall inform the Owner and Architect

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003), Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale. User Notes:                                                                                                                    (1483817728)

4

when estimates of the Cost of the Work exceed the latest approved Project budget and make recommendations for corrective action.

### § 2.1.6 Subcontractors and Suppliers
The Construction Manager shall develop bidders' interest in the Project.

§ 2.1.7 The Construction Manager shall prepare, for the Architect's review and the Owner's acceptance, a procurement schedule for items that must be ordered well in advance of construction. The Construction Manager shall expedite and coordinate the ordering and delivery of materials that must be ordered well in advance of construction. If the Owner agrees to procure any items prior to the Owner's approval of the Control Estimate, the Owner shall procure the items on terms and conditions acceptable to the Construction Manager. Upon the Owner's approval of the Control Estimate, the Owner shall assign all contracts for these items to the Construction Manager and the Construction Manager shall thereafter accept responsibility for them.

### § 2.1.8 Extent of Responsibility
The Construction Manager shall exercise reasonable care in preparing schedules and estimates. The Construction Manager, however, does not warrant or guarantee estimates and schedules, including the Control Estimate and the estimated date of Substantial Completion, except as provided in Section 2.2.4.5. The Construction Manager is not required to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Construction Manager shall promptly report to the Architect and Owner any nonconformity discovered by or made known to the Construction Manager as a request for information in such form as the Architect may require.

### § 2.1.9 Notices and Compliance with Laws
The Construction Manager shall comply with applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to its performance under this Contract, and with equal employment opportunity programs, and other programs as may be required by governmental and quasi governmental authorities for inclusion in the Contract Documents.

### § 2.2 Control Estimate
§ 2.2.1 At a time to be mutually agreed upon by the Owner and the Construction Manager and in consultation with the Architect, the Construction Manager shall prepare a Control Estimate for the Owner's review and acceptance. The Control Estimate shall be the sum of the Construction Manager's estimate of the Cost of the Work and the Construction Manager's Fee and shall include those items set forth in Section 2.2.4 below. When the Control Estimate is acceptable to the Owner, the Owner shall acknowledge it in writing.

§ 2.2.2 The Construction Manager shall develop and implement a detailed system of cost control that will provide the Owner and Architect with timely information as to the anticipated total Cost of the Work. The cost control system shall compare the Control Estimate with the actual cost for activities in progress and estimates for uncompleted tasks and proposed changes. This information shall be reported to the Owner, in writing, no later than the Construction Manager's first Application for Payment and shall be revised and submitted with each Application for Payment.

§ 2.2.3 To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Construction Manager shall provide in the Control Estimate for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated in a revised Control Estimate by mutual agreement of the parties.

§ 2.2.4 The Control Estimate shall include
    .1    a list of the Drawings and Specifications, including all Addenda thereto, and the Conditions of the Contract;
    .2    a list of the clarifications and assumptions made by the Construction Manager in the preparation of the Control Estimate, including assumptions under Section 2.2.3, to supplement the information provided by the Owner and contained in the Drawings and Specifications;
    .3    a statement of the estimated Cost of the Work organized by trade categories or systems, allowances, and the Construction Manager's Fee;



AIA Document A134™ – 2009 (formerly A131™CMc – 2003), Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09.16.17 on 07/09/2015 under Order No.7705726081_1 which expires on 02/27/2016, and is not for resale.
User Notes:    (1483517268)

Init.

  .4 the anticipated date of Substantial Completion upon which the Control Estimate is based, and a
   schedule for the issuance dates of the Construction Documents upon which the anticipated Substantial
   Completion date relies; and

  .5 a statement as to whether or not the duration from the stated date of commencement of the
   Construction Phase to the estimated date of Substantial Completion shall become the Contract Time
   and be subject to the provisions of Article 8 of A201-2007.

**§ 2.2.5** The Owner shall authorize the Architect to incorporate the agreed-upon assumptions and clarifications contained in the Control Estimate. The Owner shall promptly furnish those revised Drawings and Specifications to the Construction Manager as they are revised. The Construction Manager shall notify the Owner and Architect of any inconsistencies between the Control Estimate and the revised Drawings and Specifications.

## § 2.3 Construction Phase
### § 2.3.1 General
**§ 2.3.1.1** For purposes of Section 8.1.2 of A201-2007, the date of commencement of the Work shall mean the date of commencement of the Construction Phase which is December 1, 2014, and the date of substantial completion shall be May 31, 2015.

**§ 2.3.1.2** The Construction Phase shall commence upon the Owner's approval of the Control Estimate or the Owner's issuance of a Notice to Proceed, whichever occurs earlier.

**§ 2.3.1.3** Prior to commencement of the Construction Phase, the Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work.

### § 2.3.2 Administration
**§ 2.3.2.1** Those portions of the Work that the Construction Manager does not customarily perform with the Construction Manager's own personnel shall be performed under subcontracts or by other appropriate agreements with the Construction Manager. The Owner may designate specific persons from whom, or entities from which, the Construction Manager shall obtain bids. The Construction Manager shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Construction Manager and the Architect, which bids will be accepted. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

**§ 2.3.2.2** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner. If the Subcontract is awarded on a cost-plus a fee basis, the Construction Manager shall provide in the Subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Construction Manager in Section 6.11 below.

**§ 2.3.2.3** If the Construction Manager recommends a specific bidder that may be considered a "related party" according to Section 6.10, then the Construction Manager shall promptly notify the Owner in writing of such relationship and notify the Owner of the specific nature of the contemplated transaction, according to Section 6.10.2.

**§ 2.3.2.4** The Construction Manager shall schedule and conduct meetings to discuss such matters as procedures, progress, coordination, scheduling, and status of the Work. The Construction Manager shall prepare and promptly distribute minutes to the Owner and Architect.

**§ 2.3.2.5** Upon the Owner's approval of the Control Estimate, the Construction Manager shall prepare and submit to the Owner and Architect a construction schedule for the Work and submittal schedule in accordance with Section 3.10 of A201-2007.

**§ 2.3.2.6** The Construction Manager shall record the progress of the Project. On a monthly basis, or otherwise as agreed to by the Owner, the Construction Manager shall submit written progress reports to the Owner and Architect, showing percentages of completion and other information required by the Owner. The Construction Manager shall also keep, and make available to the Owner and Architect, a daily log containing a record for each day of weather,



**Init.** AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No 7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                  (1493815226)

6

portions of the Work in progress, number of workers on site, identification of equipment on site, problems that might affect progress of the Work, accidents, injuries, and other information required by the Owner.

### § 2.4 Professional Services
Section 3.12.10 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

### § 2.5 Hazardous Materials
Section 10.3 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

## ARTICLE 3    OWNER'S RESPONSIBILITIES
### § 3.1 Information and Services Required of the Owner
§ 3.1.1 The Owner shall provide information with reasonable promptness, regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, constraints, and criteria, including schedule, space requirements and relationships, flexibility and expandability, special equipment, systems, sustainability and site requirements.

§ 3.1.2 Prior to the Owner's approval of the Control Estimate, or within seven days of receiving the Owner's written acknowledgment required by Section 2.2.1, the Construction Manager may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Construction Manager may only request such evidence if (1) the Owner fails to make payments to the Construction Manager as the Contract Documents require, (2) a change in the Work materially changes the Contract Sum, or (3) the Construction Manager identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Construction Manager and Architect.

§ 3.1.3 The Owner shall establish and periodically update the Owner's budget for the Project, including (1) the budget for the Cost of the Work as defined in Section 6.1.1, (2) the Owner's other costs, and (3) reasonable contingencies related to all of these costs. If the Owner significantly increases or decreases the Owner's budget for the Cost of the Work, the Owner shall notify the Construction Manager and Architect. The Owner and the Architect, in consultation with the Construction Manager, shall thereafter agree to a corresponding change in the budget for the Cost of the Work or in the Project's scope and quality.

§ 3.1.4 Structural and Environmental Tests, Surveys and Reports. During the Preconstruction Phase, the Owner shall furnish the following information or services with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Construction Manager's performance of the Work with reasonable promptness after receiving the Construction Manager's written request for such information or services. The Construction Manager shall be entitled to rely on the accuracy of information and services furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 3.1.4.1 The Owner shall furnish tests, inspections and reports required by law and as otherwise agreed to by the parties, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials,

§ 3.1.4.2 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; designated wetlands; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

§ 3.1.4.3 The Owner, when such services are requested, shall furnish services of geotechnical engineers, which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations.


Init.

AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                                    (1463817268)

7

**§ 3.1.4.4** During the Construction Phase, the Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Construction Manager's performance of the Work with reasonable promptness after receiving the Construction Manager's written request for such information or services.

### § 3.2 Owner's Designated Representative
The Owner shall identify a representative authorized to act on behalf of the Owner with respect to the Project. The Owner's representative shall render decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201–2007, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 3.2.1 Legal Requirements.** The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Project to meet the Owner's needs and interests.

### § 3.3 Architect
The Owner shall retain an Architect to provide services, duties and responsibilities as described in AIA Document B103™–2007, Standard Form of Agreement Between Owner and Architect, including any additional services requested by the Construction Manager that are necessary for the Preconstruction and Construction Phase services under this Agreement. The Owner shall provide the Construction Manager a copy of the executed agreement between the Owner and the Architect, and any further modifications to the agreement.

## ARTICLE 4   COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
### § 4.1 Compensation
**§ 4.1.1** For the Construction Manager's Preconstruction Phase services, the Owner shall compensate the Construction Manager as follows:

Included in the Construction Manager's Fee for Construction Phase Services as set forth in Paragraph 5.1 below.

**§ 4.1.2** For the Construction Manager's Preconstruction Phase services described in Sections 2.1 and 2.2:
*(Insert amount of, or basis for, compensation and include a list of reimbursable cost items, as applicable.)*

**§ 4.1.3** If the Preconstruction Phase services covered by this Agreement have not been completed pursuant to the Schedule, through no fault of the Construction Manager, the Construction Manager's compensation for Preconstruction Phase services shall be equitably adjusted.

*(Paragraph deleted)*
### § 4.2 Payments
**§ 4.2.1** Unless otherwise agreed, payments for services shall be made monthly in proportion to services performed.

**§ 4.2.2** Payments are due and payable upon presentation of the Construction Manager's invoice. Amounts unpaid thirty ( 30 ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Construction Manager.
*(Insert rate of monthly or annual interest agreed upon.)*
Eight Percent (8%)

## ARTICLE 5   COMPENSATION FOR CONSTRUCTION PHASE SERVICES
**§ 5.1** For the Construction Manager's performance of the Work as described in Section 2.3, the Owner shall pay the Construction Manager the Contract Sum in current funds for the Construction Manager's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Section 6.1.1 plus the Construction Manager's Fee.

**§ 5.1.1** The Construction Manager's Compensation:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Construction Manager's Fee.)*
See attached Rider.

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726987_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                                    (1483817268)

§ 5.1.2 Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

*(Paragraphs deleted)*
§ 5.1.4 deleted.

§ 5.1.5 Rental rates for Construction Manager-owned equipment shall not exceed the standard rate paid at the place of the Project.

*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*
*(Paragraphs deleted)*
§ 5.2 Changes in the Work
§ 5.2.1 The Owner may, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions. The Owner shall issue such changes in writing. The Architect may make minor changes in the Work as provided in Section 7.4 of AIA Document A201–2007, General Conditions of the Contract for Construction. The Construction Manager shall be entitled to an equitable adjustment in the Contract Time as a result of changes in the Work. The Construction Manager shall incorporate all changes in the Work and Contract Time as separate entries in the Control Estimate.

For Changes in the Work, the following mark-ups shall apply: _Seven and One Half Percent (7.5%) for Construction Manager's General Conditions; Two Percent (2%) for Construction Manager's Fee and One and 35/100ths percent (1.35%) for Construction Manager's Commercial General Liability Insurance Costs, and Thirty Five One Hundredths of One Percent (0.35%) for Builders Risk Insurance.  Construction Manager agrees there shall be no General Conditions markup on any change that does not extend the project schedule.

§ 5.2.2 Increased costs for the items set forth in Sections 6.1 through 6.7 that result from changes in the Work shall become part of the Cost of the Work, and the Construction Manager's Fee shall be adjusted as provided in Section 5.1.2.

§ 5.2.3 If the Construction Manager receives any Drawings, Specifications, interpretations or instructions from the Owner or Architect which are inconsistent with the Contract Documents, or encounters unanticipated conditions, any of which will result in a significant change in the Cost of the Work or estimated date of Substantial Completion in comparison with the Control Estimate, the Construction Manager shall promptly notify the Owner and Architect in writing and shall not proceed with the affected Work until the Construction Manager receives further written instructions from the Owner and Architect.

§ 5.2.4 If no specific provision is made in Section 5.1.2 for adjustment of the Construction Manager's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Section 5.1.2 will cause substantial inequity to the Owner or Construction Manager, the Construction Manager's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work.


ARTICLE 6    COST OF THE WORK FOR CONSTRUCTION PHASE
§ 6.1 Costs to Be Reimbursed
§ 6.1.1 The term Cost of the Work shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in Sections 6.1 through 6.7.

§ 6.1.2 Where any cost is subject to the Owner's prior approval, the Construction Manager shall obtain this approval prior to incurring the cost.

§ 6.2 Labor Costs

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705725082_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                    (1453617266)

9

§ 6.2.1 Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

(*) § 6.2.2 Wages or salaries of the Construction Manager's supervisory and administrative personnel when stationed at the site or otherwise assigned to the project with the Owner's prior approval.   Any audit of wages or salaries of Construction Manager's supervisory and administrative personnel shall be limited to confirmation of actual hours related to the Project.

(*) § 6.2.3 Wages and salaries of the Construction Manager's supervisory or administrative personnel engaged at Construction Manager's home office, factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

(*) § 6.2.4 Costs paid or incurred by the Construction Manager for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 6.2.1 through 6.2.3.

(*) § 6.2.5 Bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired by the Construction Manager or paid to any Subcontractor or vendor, with the Owner's prior approval.

§ 6.3 Subcontract Costs
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

§ 6.4 Costs of Utilities, Materials and Equipment Incorporated in the Completed Construction
§ 6.4.1 Costs, including water, heat, utilities, and transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

§ 6.4.2 Costs of materials described in the preceding Section 6.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

§ 6.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items
§ 6.5.1 Costs of transportation, storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment and tools that are not fully consumed shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Construction Manager shall mean fair market value.

§ 6.5.2 Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site and costs of transportation, installation, minor repairs, dismantling and removal. The total rental cost of any Construction Manager-owned item may not exceed the purchase price of any comparable item. Rates of Construction Manager-owned equipment and quantities of equipment shall be subject to the Owner's prior approval.

§ 6.5.3 Costs of removal of debris from the site of the Work and its proper and legal disposal, excluding demolition, which is a separate subcontract.

(*) § 6.5.4 Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

(*) § 6.5.5 That portion of the reasonable expenses of the Construction Manager's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:16:17 on 07/08/2015 under Order No.7705726067_1 which expires on 02/27/2016, and is not for resale. User Notes: (1483817269)

Init.



10

§ 6.5.6 Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

### § 6.6 Miscellaneous Costs

§ 6.6.1 Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

§ 6.6.2 Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Construction Manager is liable, subject to Construction Manager's receipt of a valid Certificate of Capital Improvement from Owner .

§ 6.6.3 Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

§ 6.6.4 Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201–2007 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 6.7.3.

§ 6.6.5 Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Construction Manager resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Construction Manager's Fee. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of AIA Document A201–2007 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work

(*) § 6.6.6 Costs for electronic equipment and software, directly related to the Work with the Owner's prior approval.

§ 6.6.7 Deposits lost for causes other than the Construction Manager's negligence or failure to fulfill a specific responsibility in the Contract Documents.

§ 6.6.8 Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

§ 6.6.9 Subject to the Owner's prior approval, expenses incurred in accordance with the Construction Manager's standard written personnel policy for relocation and temporary living allowances of the Construction Manager's personnel required for the Work.

### § 6.7 Other Costs and Emergencies

§ 6.7.1 Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

§ 6.7.2 Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of AIA Document A201–2007.

§ 6.7.3 Costs of repairing or correcting damaged or nonconforming Work executed by the Construction Manager, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Construction Manager and only to the extent that the cost of repair or correction is not recovered by the Construction Manager from insurance, sureties, Subcontractors, suppliers, or others.

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:16:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale. User Notes: (1463617268)

§ 6.7.4 The costs described in Sections 6.1 through 6.7 shall be included in the Cost of the Work notwithstanding any provision of AIA Document A201–2007 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 6.8.

§ 6.7.5   All building charges including, but not limited to, elevator charges and utility shutdown for tie-in of services.

§ 6.7.6   Cost of an operating engineer and/or elevator constructor, if required.

(*) § 6.7.7   The cost of reproducing construction documents for bids, revisions and contract sets.

§ 6.7.8   The cost of carting the Owner's rubbish and debris, if applicable.

§ 6.7.9   General Conditions costs arising out of the Owner's separate Contracts, if applicable.

§ 6.7.10   . Filing fees and all costs related thereto if applicable.

§ 6.7.11   The Cost of Work items marked with an asterisk (*) are herein defined as "General Conditions." Owner will pay Construction Manager the amount set forth in Article 5.1.4 for Construction Manager's "General Conditions" costs.

## § 6.8 Costs Not to Be Reimbursed
§ 6.8.1 The Cost of the Work shall not include the items listed below:
- (*).1   Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Section 6.2, or as may be provided in Article 11;
- (*).2   Expenses of the Construction Manager's principal office and offices other than the site office;
- (*).3   Overhead and general expenses, except as may be expressly included in Sections 6.1 through 6.7;
- .4   The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work;
- .5   Except as provided in Section 6.7.3 of this Agreement, costs due to the negligence or failure of the Construction Manager, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract;
- .6   Except as provided in Section 6.7.1, any cost not specifically and expressly described in Sections 6.1 through 6.7; and

## § 6.9 Discounts, Rebates and Refunds
§ 6.9.1 Cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner if (1) before making the payment, the Construction Manager included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Construction Manager with which to make payments; otherwise, cash discounts shall accrue to the Construction Manager. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Construction Manager shall make provisions so that they can be obtained.

§ 6.9.2 Amounts that accrue to the Owner in accordance with the provisions of Section 6.9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## § 6.10 Related Party Transactions
§ 6.10.1 For purposes of Section 6.10, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Construction Manager; any entity in which any stockholder in, or management employee of, the Construction Manager owns any interest in excess of ten percent in the aggregate; or any person or entity which has the right to control the business or affairs of the Construction Manager. The term "related party" includes any member of the immediate family of any person identified above.

§ 6.10.2 If any of the costs to be reimbursed arise from a transaction between the Construction Manager and a related party, the Construction Manager shall notify the Owner of the specific nature of the contemplated

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/07/2016, and is not for resale.
User Notes:                                                                                                                        (1493017269)

transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction, then the cost incurred shall be included as a cost to be reimbursed, and the Construction Manager shall procure the Work, equipment, goods or service from the related party, as a Subcontractor, according to the terms of Sections 2.3.2.1, 2.3.2.2 and 2.3.2.3. If the Owner fails to authorize the transaction, the Construction Manager shall procure the Work, equipment, goods or service from some person or entity other than a related party according to the terms of Sections 2.3.2.1, 2.3.2.2 and 2.3.2.3.

### § 6.11 Accounting Records
The Construction Manager shall keep full and detailed records and accounts related to the cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Construction Manager's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Construction Manager shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 7    PAYMENTS FOR CONSTRUCTION PHASE SERVICES
### § 7.1 Progress Payments
§ 7.1.1 Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents.

§ 7.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 7.1.3 Provided that an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment of the certified amount to the Construction Manager not later than the last day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty ( 30 ) days after the Architect receives the Application for Payment.

*(Federal, state or local laws may require payment within a certain period of time.)*

§ 7.1.4 With each Application for Payment, the Construction Manager shall submit Construction Manager's Waiver of Lien for the previous payment period to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed progress payments already received by the Construction Manager, less that portion of those payments attributable to the Construction Manager's Fee

§ 7.1.5 Applications for Payment shall show the Cost of the Work actually incurred by the Construction Manager through the end of the period covered by the Application for Payment and for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment.

§ 7.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:
  .1    Take the Cost of the Work as described in Section 6.1.1;
  .2    Add the Construction Manager's Fee, less retainage of zero percent ( 0% ). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the preceding Section 7.1.6.1 at the rate stated in Section 5.1.1; or if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;
  .3    Subtract retainage of zero percent ( 0% ) from that portion of the Work that the Construction Manager self-performs;
  .4    Subtract the aggregate of previous payments made by the Owner;


Init.

AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705720582_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                                (1483617260)

13

.5    Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.6    Subtract amounts, if any, for which the Architect has withheld or withdrawn a Certificate for Payment as provided in the Contract Documents.

**§ 7.1.7** The Owner and Construction Manager shall agree upon (1) a mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts; and the Construction Manager shall execute subcontracts in accordance with those agreements.

Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than Ten Percent (10%). Subcontracts may provide that after a Subcontractor has completed at least fifty percent (50%) of the Work to be performed by such Subcontractor, then unless the Owner shall have reasonable grounds to continue to require a full ten percent (10%) retainage, additional payments to such Subcontractor shall not be subject to retainage so that upon Substantial Completion of such subcontractor's work there shall be only a five percent (5%) retainage withheld.   If a Subcontractor has completed its work prior to the completion of the Work of which such Subcontractor's work forms a part, the Owner will not unreasonably withhold or delay its approval of a request by the contractor to pay the balance owed to such Subcontractor.

**§ 7.1.8** Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 7.1.9** In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§ 7.1.10**  Owner and Construction Manager hereby agree that in addition to any other means, methods or procedures for payment set forth in this Agreement, payment of sums due Construction Manager, may, at the request of the Construction Manager, be made in the form of checks issued payable either jointly to Construction Manager and to one or more of its Subcontractors, suppliers or other persons or entities engaged by Construction Manager on the Project, or directly to any such party if requested by the Construction Manager.   Payment in any such manner shall constitute payment hereunder and complete satisfaction of Owner's obligations under this Agreement, and the full amount of such payment, whether paid to Construction Manager, issued jointly or paid directly to the subcontractors, suppliers or other persons or entities engaged by Construction Manager shall be credited against the Contract Sum set forth in this Agreement.

### § 7.2 Final Payment
**§ 7.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Construction Manager when

.1    the Construction Manager has fully performed the Contract except for the Construction Manager's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment;

.2    the Construction Manager has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

.3    a final Certificate for Payment has been issued by the Architect.

The Owner's final payment to the Construction Manager shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**§ 7.2.2** The Owner's auditors will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Construction Manager's final accounting,

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003, and 2009 by The American Institute of Architects. **All rights reserved.**
**WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**®
**Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**
This document was produced by AIA software at 09:18:17 on 07/06/2015 under Order No.7705726082_1 which expires on 02/27/2016, and is not for resale.
**User Notes:**                                                                                                                            (1433617288)

14

and provided the other conditions of Section 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager, or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201–2007. The time periods stated in this Section supersede those stated in Section 9.4.1 of the AIA Document A201–2007. The Architect is not responsible for verifying the accuracy of the Construction Manager's final accounting.

**§ 7.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 15.2 of A201–2007. A request for mediation shall be made by the Construction Manager within 30 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

**§ 7.2.4** If, subsequent to final payment and at the Owner's request, the Construction Manager incurs costs described in Section 6.1.1 and not excluded by Section 6.8 to correct defective or nonconforming Work, the Owner shall reimburse the Construction Manager such costs and the Construction Manager's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment.

**§ 7.3  TRUST FUNDS**   Any and all funds payable to Construction Manager hereunder are declared to constitute trust funds in the hands of the Construction Manager, to be applied first to the payment of claims of Subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the Work, to claims for utilities furnished and taxes imposed, and to the payment of premiums for insurances, surety bonds and other bonds before application to any other purpose.

**ARTICLE  8    INSURANCE AND BONDS**
For all phases of the Project, the Construction Manager and the Owner shall purchase and maintain insurance, and the Construction Manager shall provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

*(Table deleted)*
**ARTICLE  9    DISPUTE RESOLUTION**
**§ 9.1** Any Claim between the Owner and Construction Manager shall be resolved in accordance with the provisions set forth in this Article 9 and Article 15 of A201–2007. However, for Claims arising from or relating to the Construction Manager's Preconstruction Phase services, no decision by the Initial Decision Maker shall be required as a condition precedent to mediation or binding dispute resolution, and Section 9.3 of this Agreement shall not apply.

**§ 9.2** For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Construction Manager do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[    ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ X ]    Litigation in a court of competent jurisdiction

[    ]    Other: *(Specify)*

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1894, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:16:17 on 07/09/2015 under Order No.7205726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                    (1463817293)

### § 9.3 Initial Decision Maker
The Architect will serve as the Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007 for Claims arising from or relating to the Construction Manager's Construction Phase services, unless the parties appoint below another individual, not a party to the Agreement, to serve as the Initial Decision Maker. *(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*


## ARTICLE 10    TERMINATION OR SUSPENSION
### § 10.1 Termination Prior to Owner's Approval of the Control Estimate
§ 10.1.1 Prior to the Owner's approval of the Control Estimate, the Owner may terminate this Agreement upon not less than seven days' written notice to the Construction Manager for the Owner's convenience and without cause, and the Construction Manager may terminate this Agreement, upon not less than seven days' written notice to the Owner, for the reasons set forth in Section 14.1.1 of A201–2007.

§ 10.1.2 In the event of termination of this Agreement pursuant to Section 10.1.1, the Construction Manager shall be equitably compensated for Preconstruction Phase services performed prior to receipt of a notice of termination. In no event shall the Construction Manager's compensation under this Section exceed the compensation set forth in Section 4.1.

§ 10.1.3 In the event of termination of this Agreement pursuant to Section 10.1.1, after the commencement of the Construction Phase but prior to the Owner's approval of the Control Estimate, the Owner shall pay to the Construction Manager under Section 10.1.2 an amount calculated as follows, which amount shall be in addition to any compensation paid to the Construction Manager under Section 10.1.2:

    .1   Take the Cost of the Work incurred by the Construction Manager to the date of termination;

    .2   Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

    .3   Subtract the aggregate of previous payments made by the Owner for Construction Phase services.

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Section 10.1.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders. All Subcontracts, purchase orders and rental agreements entered into by the Construction Manager will contain provisions allowing for assignment to the Owner as described above.

If the Owner accepts assignment of subcontracts, purchase orders or rental agreements as described above, the Owner will reimburse or indemnify the Construction Manager for all costs arising under the subcontract, purchase order or rental agreement if those costs would have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner chooses not to accept assignment of any subcontract, purchase order or rental agreement that would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager will terminate the subcontract, purchase order or rental agreement and the Owner will pay the Construction Manager the costs necessarily incurred by the Construction Manager because of such termination.

### § 10.2 Termination Subsequent to the Owner's Approval of the Control Estimate
§ 10.2.1 Subsequent to the Owner's approval of the Control Estimate, the Contract may be terminated as provided in Sections 14.1.1, 14.1.2 and 14.2.1 of A201–2007. The provisions of Article 14 of A201–2007 do not otherwise apply to this Section 10.2.

**Init.**



**AIA Document A134™ – 2009** (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved.** WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726987_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                     (1483817260)

**16**

§ 10.2.2 In the event of such termination by the Owner, the amount payable to the Construction Manager shall not exceed the amount the Construction Manager would have been entitled to receive pursuant to Sections 10.1.2 and 10.1.3 of this Agreement, less any compensation that may be awarded to the Owner pursuant to Article 9.

§ 10.2.3 In the event of such termination by the Construction Manager, the amount payable to the Construction Manager shall be in accordance with Sections 10.1.2 and 10.1.3 of this Agreement, except that the Construction Manager's Fee shall be calculated as if the Work had been fully completed by the Construction Manager, including a reasonable estimate of the Cost of the Work for Work not actually completed.

§ 10.2.4 In addition to the Owner's right to terminate this Agreement for cause as provided in Section 14.2.1 of A201–2007, the Owner may terminate this Agreement for convenience as provided in Section 14.4; however, the Owner shall then only pay the Construction Manager an amount calculated as follows:

   .1   Take the Cost of the Work incurred by the Construction Manager to the date of termination;

   .2   Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

   .3   Subtract the aggregate of previous payments made by the Owner.

### § 10.3 Suspension
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007. In such case, the Contract Estimate and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201–2007, except that the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 5.1 and 5.2.4 of this Agreement.

### ARTICLE 11   MISCELLANEOUS PROVISIONS
§ 11.1 Terms in this Agreement shall have the same meaning as those in A201–2007.

### § 11.2 Ownership and Use of Documents
Section 1.5 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

### § 11.3 Governing Law
Section 13.1 of A201–2007 shall apply to both the Preconstruction and Construction Phases.

### § 11.4 Assignment
The Owner and Construction Manager, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Construction Manager shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing for the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement. Except as provided in Section 13.2.2 of A201–2007, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

### § 11.5 Other provisions:

  § 11.5.1 At project onset, and prior to the execution of the Contract, Owner shall advise Construction Manager in writing if the Project is eligible for any special tax credits or abatements (e.g. ICIP/ ICAP).

### ARTICLE 12   SCOPE OF THE AGREEMENT
§ 12.1 This Agreement represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Construction Manager.

§ 12.2 The following documents comprise the Agreement:

Init.



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved.** **WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**® **Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                    (1443617269)

**17**

.1    AIA Document A134–2009, Standard Form of Agreement Between Owner and Construction Manager as Constructor where the basis of payment is the Cost of the Work Plus a Fee without a Guaranteed Maximum Price

.2    AIA Document A201–2007, General Conditions of the Contract for Construction

.3

*(Paragraphs deleted)*

Other documents/Exhibits:

*(List other documents, if any, forming part of the Agreement.)*

Exhibit "A"   Contractor's Letter of Intent:  Scope of Work, General Conditions, Fee, Insurance, Alternates and Staffing Plan, dated November 26, 2014 (note the references to the incentives and liquidated damages provisions in the letter are waived by mutual agreement).

This Agreement is entered into as of the day and year first written above.

**PREMIER EXHIBITIONS**

**OWNER** *(Signature)*

~~Rowena D. Girandi~~  *Michael Litt*
~~Partner~~   *Intern CEO*
*(Printed name and title)*

**STRUCTURE TONE, INC**

**CONSTRUCTION MANAGER** *(Signature)*

Michael P. Neary
Chief Operating Officer
*(Printed name and title)*


AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705720007_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                    (1483817269)

Init.

/

**18**

**Init.**



AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA° Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA° Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705728087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                                (1483817265)

**19**

# Additions and Deletions Report for
*AIA Document A134™ – 2009*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 09.18.17 on 07/09/2015.

## PAGE 1

AGREEMENT made as of the First day of  December in the year Two Thousand Fourteen

…

*(Name, legal status and address)*

Premier Exhibitions
3340 Peachtree Rd., NE, Suite 900
Atlanta, GA    30326
Attn:  Michael Little

…

Structure Tone, Inc.
770 Broadway,   9ᵗʰ fl.
New York, NY    10003

…

*(Name and address or location)*

Premier Exhibits
417 Fifth Ave., Basement, 1ˢᵗ, Mezzanine & 2ⁿᵈ fls.
Conversion of Shell Space into Exhibition Space on 1ˢᵗ, Mezzanine & 2ⁿᵈ fls.
New York, NY

…

Gensler
1230 Ave. of the Americas
New York, NY    10003

…

Premier Exhibitions
3340 Peachtree Rd., NE, Suite 900
Atlanta, GA    30326
Attn:  Michael Little

…

Structure Tone, Inc.

Additions and Deletions Report for AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705729007_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                           (1483617288)



770 Broadway, 9th fl.
New York, NY   10003
Attn: Karl Anoushian

**PAGE 2**

Gensler
1230 Ave. of the Americas
New York, NY   10003
Attn: Thomas Turner

**PAGE 3**

Additions and Deletions Report for AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:10:17 on 07/09/2015 under Order No 7705726087_1 which expires on 02/27/2016  and is not for resale.
User Notes:                                                                                                      (1483817268)

2

~~TABLE OF ARTICLES~~TABLE OF ARTICLES

PAGE 6

§ 2.3.1.1 For purposes of Section 8.1.2 of A201–2007, the date of commencement of the Work shall mean the date of commencement of the Construction Phase. Phase which is December 1, 2014, and the date of substantial completion shall be May 31, 2015.

PAGE 8

Included in the Construction Manager's Fee for Construction Phase Services as set forth in Paragraph 5.1 below.

...

§ 4.1.3 If the Preconstruction Phase services covered by this Agreement have not been completed within ~~( )~~ ~~months of the date of this Agreement,~~ pursuant to the Schedule, through no fault of the Construction Manager, the Construction Manager's compensation for Preconstruction Phase services shall be equitably adjusted.

~~§ 4.1.4 Compensation based on Direct Personnel Expense includes the direct salaries of the Construction Manager's personnel providing Preconstruction Phase services and the Construction Manager's costs for the mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, employee retirement plans and similar contributions.~~

...

§ 4.2.2 Payments are due and payable upon presentation of the Construction Manager's invoice. Amounts unpaid thirty ~~( 30 )~~ days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Construction Manager.

...

~~%~~ Eight Percent (8%)

...

§ 5.1.1 The Construction Manager's ~~Fee:~~Compensation:

...

See attached Rider.

§ 5.1.2 ~~The method of adjustment of the Construction Manager's Fee for change in the Work:~~

Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

~~§ 5.1.3 Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:~~

§ 5.1.4 ~~Rental rates for Construction Manager-owned equipment shall not exceed percent ( %) of the standard rate paid at the place of the Project.~~ deleted.

Additions and Deletions Report for AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No 7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                          (1483817265)



PAGE 9

§ 5.1.5 ~~Unit prices, if any.~~ Rental rates for Construction Manager-owned equipment shall not exceed the standard rate paid at the place of the Project.
*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*

~~Item~~        ~~Units and Limitations~~        ~~Price per Unit ($0.00)~~

...

For Changes in the Work, the following mark-ups shall apply:   Seven and One Half Percent (7.5%) for Construction Manager's General Conditions; Two Percent (2%) for Construction Manager's Fee and One and 35/100ths percent (1.35%) for Construction Manager's Commercial General Liability Insurance Costs, and Thirty Five One Hundredths of One Percent (0.35%) for Builders Risk Insurance.   Construction Manager agrees there shall be no General Conditions markup on any change that does not extend the project schedule.

PAGE 10

(*) § 6.2.2 Wages or salaries of the Construction Manager's supervisory and administrative personnel when stationed at the site ~~with the Owner's prior approval.~~
~~(If it is intended that the wages or salaries of certain personnel stationed at the Construction Manager's principal or other offices shall be included in the Cost of the Work, identify in Section 11.5, the personnel to be included, whether for all or only part of their time, and the rates at which their time will be charged to the Work.)~~ or otherwise assigned to the project with the Owner's prior approval.   Any audit of wages or salaries of Construction Manager's supervisory and administrative personnel shall be limited to confirmation of actual hours related to the Project.

(*) § 6.2.3 Wages and salaries of the Construction Manager's supervisory or administrative personnel engaged at Construction Manager's home office; factories, workshops or on the road; in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

(*) § 6.2.4 Costs paid or incurred by the Construction Manager for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 6.2.1 through 6.2.3.

(*) § 6.2.5 Bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired by the Construction Manager or paid to any Subcontractor or vendor. with the Owner's prior approval.

...

§ 6.4 ~~Costs of Materials and Equipment Incorporated in the Completed Construction~~ Costs of Utilities, Materials and Equipment Incorporated in the Completed Construction.
§ 6.4.1 Costs, including water, heat, utilities, and transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

...

§ 6.5.3 Costs of removal of debris from the site of the Work and its proper and legal ~~disposal~~ disposal, excluding demolition, which is a separate subcontract.

(*) § 6.5.4 Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

Additions and Deletions Report for AIA Document A134™ – 2009 (formerly A131™CMc –2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                              (1453017260)



4

(*) § 6.5.5 That portion of the reasonable expenses of the Construction Manager's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

PAGE 11

§ 6.6.2 Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Construction Manager is liable liable, subject to Construction Manager's receipt of a valid Certificate of Capital Improvement from Owner..

...

(*) § 6.6.6 Costs for electronic equipment and software, directly related to the Work with the Owner's prior approval.

PAGE 12

§ 6.7.5   All building charges including, but not limited to, elevator charges and utility shutdown for tie-in of services.

§ 6.7.6   Cost of an operating engineer and/or elevator constructor, if required.

(*) § 6.7.7   The cost of reproducing construction documents for bids, revisions and contract sets.

§ 6.7.8   The cost of carting the Owner's rubbish and debris, if applicable.

§ 6.7.9   General Conditions costs arising out of the Owner's separate Contracts, if applicable.

§ 6.7.10   Filing fees and all costs related thereto if applicable.

§ 6.7.11   The Cost of Work items marked with an asterisk (*) are herein defined as "General Conditions."   Owner will pay Construction Manager the amount set forth in Article 5.1.4 for Construction Manager's "General Conditions" costs.

...

 .1   (*) .1         Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Section 6.2, or as may be provided in Article 11;

 .2   (*) .2         Expenses of the Construction Manager's principal office and offices other than the site office;

 .3   (*) .3         Overhead and general expenses, except as may be expressly included in Sections 6.1 through 6.7;

...

 .6   Any Except as provided in Section 6.7.1, any cost not specifically and expressly described in Sections 6.1 through 6.7; and

 .7   Costs for services incurred during the Preconstruction Phase.

PAGE 13

§ 7.1.3 Provided that an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment of the certified amount to the Construction Manager not later than the last day of the following month. If an Application for Payment is received by the Architect after the application date fixed above;



Additions and Deletions Report for AIA Document A124™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726587_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                                    (1483617268)

payment shall be made by the Owner not later than ~~thirty ( 30 )~~ days after the Architect receives the Application for Payment.

...

§ 7.1.4 With each Application for Payment, the Construction Manager shall submit ~~payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect~~ Construction Manager's Waiver of Lien for the previous payment period to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed progress payments already received by the Construction Manager, less that portion of those payments attributable to the Construction Manager's ~~Fee, plus payrolls for the period covered by the present Application for Payment.~~ Fee

...

> .2    Add the Construction Manager's Fee, less retainage of zero percent ( ~~%~~ 0% ). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the preceding Section 7.1.6.1 at the rate stated in Section 5.1.1; or if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;
>
> .3    Subtract retainage of zero percent ( ~~%~~ 0% ) from that portion of the Work that the Construction Manager self-performs;

## PAGE 14

Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than Ten Percent (10%). Subcontracts may provide that after a Subcontractor has completed at least fifty percent (50%) of the Work to be performed by such Subcontractor, then unless the Owner shall have reasonable grounds to continue to require a full ten percent (10%) retainage, additional payments to such Subcontractor shall not be subject to retainage so that upon Substantial Completion of such subcontractor's work there shall be only a five percent (5%) retainage withheld.  If a Subcontractor has completed its work prior to the completion of the Work of which such Subcontractor's work forms a part, the Owner will not unreasonably withhold or delay its approval of a request by the contractor to pay the balance owed to such Subcontractor.

...

§ 7.1.10  Owner and Construction Manager hereby agree that in addition to any other means, methods or procedures for payment set forth in this Agreement, payment of sums due Construction Manager, may, at the request of the Construction Manager, be made in the form of checks issued payable either jointly to Construction Manager and to one or more of its Subcontractors, suppliers or other persons or entities engaged by Construction Manager on the Project, or directly to any such party if requested by the Construction Manager.  Payment in any such manner shall constitute payment hereunder and complete satisfaction of Owner's obligations under this Agreement, and the full amount of such payment, whether paid to Construction Manager, issued jointly or paid directly to the subcontractors, suppliers or other persons or entities engaged by Construction Manager shall be credited against the Contract Sum set forth in this Agreement.

## PAGE 15

§ 7.3   TRUST FUNDS   Any and all funds payable to Construction Manager hereunder are declared to constitute trust funds in the hands of the Construction Manager, to be applied first to the payment of claims of Subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the Work, to claims for utilities furnished and taxes imposed, and to the payment of premiums for insurances, surety bonds and other bonds before application to any other purpose.

...



Additions and Deletions Report for AIA Document A131™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                                         (1463817258)

6

~~Type of Insurance or Bond~~                    ~~Limit of Liability or Bond Amount ($0.00)~~

...

   [ __X__ ]    Litigation in a court of competent jurisdiction

**PAGE 17**

§.11.5.1 At project onset, and prior to the execution of the Contract, Owner shall advise Construction Manager in writing if the Project is eligible for any special tax credits or abatements (e.g. ICIP/ ICAP).

**PAGE 18**

    .3    ~~AIA Document E201™ 2007, Digital Data Protocol Exhibit, if completed, or the following:~~

    .4    ~~AIA Document E202™ 2008, Building Information Modeling Protocol Exhibit, if completed, or the following:~~

    .5    ~~Other documents:~~Other documents/Exhibits:

...

Exhibit "A"   Contractor's Letter of Intent:   Scope of Work, General Conditions, Fee, Insurance, Alternates and Staffing Plan, dated November 26, 2014 (note the references to the incentives and liquidated damages provisions in the letter are waived by mutual agreement).

...

**PREMIER EXHIBITIONS**                    **STRUCTURE TONE, INC**

~~Roxanne O. Gilliand~~    michael Little

~~Partner~~    Interim  CEO

Michael P. Neary
Chief Operating Officer

...

Additions and Deletions Report for AIA Document A134™ – 2009 (formerly A131™CMc – 2003). Copyright © 1994, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:58:17 on 07/09/2015 under Order No 7765726087_1 which expires on 02/27/2016, and is not for resale.
User Notes:                                                                    (1463817265)



**Additions and Deletions Report for AIA Document A134™ – 2009 (formerly A131™CMc – 2003).** Copyright © 1994, 2003 and 2009 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705720087_1 which expires on 02/27/2016, and is not for resale.
**User Notes:**                                                                                                     (1483317208)

8

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Glen P. Kennedy, Assistant General Counsel for Structure Tone, Inc., hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 09:18:17 on 07/09/2015 under Order No. 7705726087_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A134™ – 2009, Standard Form of Agreement Between Owner and Construction Manager as Constructor   where the basis of payment is the Cost of the Work Plus a Fee without a Guaranteed Maximum Price, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:18:17 on 07/09/2015 under Order No.7705726087_1 which expires on 02/27/2016, and is not for resale.
**User Notes:**                                                                                                                                (1463617266)

# Exhibit "A"

 **STRUCTURETONE**

November 26, 2014

National

Boston, MA

Dallas, TX

Hartford, CT

Houston, TX

New York, NY.

Philadelphia, PA

San Antonio, TX

Stamford, CT

Washington, DC

Woodbridge, NJ

International

Dublin, Ireland

Hong Kong, China

London, England

Shanghai, China

Shenzhen, China

Suzhou, China

Mr. Michael Little
Interim Chief Executive Officer / Chief Financial Officer
Premier Exhibitions
3340 Peachtree Rd., NE Suite 900
Atlanta, GA 30326

> **Subject:**  Premier Exhibitions – 417 Fifth Avenue, New York, NY
> **Submission of Letter of Intent**

Dear Mr. Little:

This Letter of Intent shall confirm Premier's intention to enter into an agreement with Structure Tone Inc. ("STI") for the performance of construction services related to the above-referenced project.

The parties agree that Premier shall pay Structure Tone Inc. a Construction Management Fee of **2.0%**, Insurance **1.35%**, and General Conditions of **$785,000** inclusive of preconstruction services performed to date. STI will offer and add alternate for Builder's Risk Insurance (if not provided by Premier) at 0.35% of the total project cost inclusive of all deductibles.

*Please reference the attached summary for further information.*

As agreed on our conference call on November 25, 2014 the following captures the intent of our agreement as it relates to incentives and liquidated damages:

- Construction schedule duration of twenty six (26) weeks from date of acceptance of Letter of Intent (no earlier than December 1, 2014)
- Incentive of $2,000/day for every day project is delivered prior to (26) weeks
- Liquidated damages of $2,000/day for every day beyond 26 weeks + a 2 week grace period that the project is not turned over.

This letter of intent shall also serve as authorization for STI to commence and construction services on the Project and to enter into owner approved subcontracts and/or purchase orders ("Subcontracts") with subcontractors and/or suppliers which STI deems necessary to furnish and deliver materials and equipment required for the project.

In the event the parties fail to execute a definitive agreement, and/or the Project is suspended or terminated, Premier Exhibitions shall promptly pay STI for all costs actually incurred under approved Subcontracts to the date of termination, plus a reasonable amount for STI's overhead and profit (based on the percentages or other estimates contained in the second paragraph hereof), plus any costs and expenses incurred for demobilization.

Structure Tone Inc.
770 Broadway • New York, NY 10003
Tel: 212.481.6100 • Fax: 212.685.9267

**STRUCTURETONE**

We thank you for the opportunity to be an integral part of the Premier Exhibition Project Team. Please feel free to contact me directly at 212-251-9307 if I can be of further assistance.

Please indicate your agreement with the above terms and conditions by signing and returning one copy of this Letter of Intent to my attention.

Very truly yours,

Karl Anoushian
Senior Vice President

Agreed and accepted:

By: _____    Date: __11__|__26_____, 2014

 **STRUCTURETONE**

5/20/2014
updated 11/25/2014

**Premier Exhibitions**
**417 Fifth Avenue**
**New York, NY**
                    **Final Submission based on Nov. 25, 2014 conference call**
General Conditions:

General Conditions are proposed at $785,000 and are enumerated as follows inclusive of early
services to date and a final 28 week construction schedule

Executive In Charge
Senior Project Manager
Project Manager
Superintendents
Plan Clerk
Account Executive
Estimating
Technical Services
Site Safety Coordinator
Scheduler
Accounting
Building Department Coordinator
STI Project Support Staff
Preconstruction Services
Permit Pickup
Messenger Services
Postage
Photocopies
Travel (Local)
Field Office Expense
Field Communications
Telephone/ Fax
Blueprint Allowance
Misc. Expenses & Petty Cash

Fee:
The Fee is proposed at 2.00% of the total project cost.

Insurance:
Insurance is proposed at 1.35% of the total project cost.

Add Alternate: Builders Risk Insurance (if not provided by Premier)
Builders Risk Insurance is proposed at 0.35% of the total project cost inclusive of all deductables.

ADDENDUM TO STANDARD FORM OF AGREEMENT BETWEEN OWNER AND
CONSTRUCTION MANAGER AS CONSTRUCTOR

(AIA DOCUMENT A134-2009)

This Addendum modifies and supplements the terms and conditions set forth in the
Standard Form of Agreement Between Owner and Construction Manager as Constructor (AIA
Document A134-2009). Where any Article, Paragraph, Subparagraph or Clause of the AIA
Document AIA Document A134-2009 edition, is modified or deleted by this Addendum, the
unaltered provisions of that Article, Paragraph, Subparagraph or Clause shall remain in effect.
The following Articles, Paragraphs and Subparagraphs relate to the comparable Articles,
Paragraphs and Subparagraphs of the AIA DOCUMENT AIA Document A134-2009

ARTICLE 1

GENERAL PROVISIONS

§1.2    Add the following at the end of Paragraph 1.2:

   "Construction Manager shall perform its services under the Agreement and shall cause
   the entire Work described in the Contract Documents to be executed in accordance with
   the standard of care and skill for contractors experienced in the construction (and
   construction management) of projects of similar size, scope and complexity."

§1.3    Add the following at the end of the second sentence of Paragraph 1.3:

   ", as modified by Owner and attached hereto as the Supplementary Conditions to AIA
   Document A201-2007 General Conditions of the Contract for Construction (the "General
   Conditions"). The General Conditions, as so modified, are incorporated in this
   Agreement as though fully set forth herein."

§1.4    Insert the following at the beginning of the first sentence of Paragraph 1.4:

   "Subject to the provisions of Paragraph 5.1.4 hereof,"

§1.5    Add the following as a new Paragraph 1.5:

   §1.5    KEY PERSONNEL

   In performance of the Work and other services to be provided under the Agreement,
   Construction Manager shall use or employ only duly qualified and experienced
   personnel. If any person is deemed unfit for their duties by Owner, then Construction
   Manager shall remove them from the Project. The Contractor shall furnish in writing to
   the Owner the name and qualifications of the following key personnel (the "Key
   Personnel"): (a) Project Manager and (b) General Superintendent. The Owner shall reply
   within five (5) business days to the Contractor in writing if the Owner has reasonable
   objection to any of the proposed Key Personnel. The Contractor shall not employ any
   proposed Key Personnel to whom the Owner has made reasonable and timely objection.

269997.2

The Contractor shall not change any Key Personnel without the Owner's consent, which shall not unreasonably be withheld or delayed.

ARTICLE 2

CONSTRUCTION MANAGER'S RESPONSIBILITIES

§2.3.1.2    Delete the printed text in Section 2.3.1.2 and substitute the following:

"§3.1   The Construction Phase shall commence on the date fixed in a notice to proceed issued by the Owner (the "Notice to Proceed"). The Construction Manager shall, upon receipt of the Notice to Proceed, diligently and continuously proceed with the performance of the Work after receipt of the Notice to Proceed. Time is of the essence."

ARTICLE 4

COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

§4.1.1    Amend the inserted text following Section 4.1.1 to add the following" "; and, accordingly, no fee or compensation shall be paid with respect to any Preconstruction Phase services rendered prior to the date hereof."

§4.1.2    Add the following: "No fee or compensation shall be paid with respect to any Preconstruction Phase services rendered prior to the date hereof

§4.2.2    Amend Subsection 4.2.2 by adding the phrase "and approved by the Owner" after the word "invoice" in the first line thereof.

ARTICLE 5

COMPENSATION FOR CONSTRUCTION PHASE SERVICES

§5.1.1   Amend the inserted text following §5.1.1 as follows:

"The Cost of the Work, as defined in Article 6, plus the following: (i) a fixed amount of Seven Hundred Eighty Five Thousand ($785,000) as compensation for Construction Manager's Preconstruction Phase services and all Preconstruction Phase and Construction Phase general conditions costs and expenses) *plus* (ii) one and 35/100ths percent (1.35%) of the Cost of the Work for Construction Manager's Insurance Costs, *plus* (iii) 35/100ths percent (.35%) of the Cost of the Work for Construction Manager's builder's risk insurance (if and to the extent not procured by Owner), *and* (iv) two percent (2%) of the Cost of the Work, exclusive of the items referenced in clauses (ii) and (iii) and any contingency amount (and with respect to clause (i), the costs marked with an asterisk (*) in Article 6 to which such fixed general conditions fee relates). The matters referenced in clauses (ii) and (iii) immediately preceding are sometimes referred to as "Construction Manager's Insurance Costs".

~~§5.1.4 Amend the first sentence of the inserted text following §5.1.4 as follows:~~

~~"Notwithstanding the above, Owner and Construction Manager agree that when the selection of Subcontractors for all or substantially all trades have been agreed upon, a Stipulated Sum Price ("Contract Sum") shall be established, comprised of the following: (i) all Subcontractor [trade line values/awarded contracts], *plus* (ii) Construction Manager's compensation, as set forth in §5.1.1 above."~~ Deleted.

§5.2.1  Add the following at the end for Section 5.2.1:

> "The Owner shall not be obligated to pay for any changes not evidenced by written Change Order executed by the Owner."

ARTICLE 6

COSTS OF THE WORK FOR CONSTRUCTION PHASE

§6.5.2  Add the following to the end of Subparagraph 6.5.2:

> "The Cost of the Work described in this Subparagraph 6.5.2 shall include only straight rental costs and will not include any costs associated with the purchase of, or an option to purchase on, the machinery or equipment. Above-normal maintenance, capital improvements and overhauls are not chargeable to the Owner."

6.5.5  Add the following to the end of Subparagraph 6.1.5.5: "if approved in advance in writing by the Owner."

§6.6.8  Add in the second line after the words, "Construction Manager," the words "or between the Construction Manager and a Subcontractor or supplier,"

§6.7.2  Add the following to the end of Subparagraph 6.7.2:

> ", provided that such threatened damage, injury or loss is not (a) caused by (i) the negligence or failure to fulfill a specific responsibility of the Construction Manager to the Owner set forth in the Contract Documents, or (ii) the failure of the Construction Manager's personnel to supervise adequately the Work of the Subcontractors or suppliers, or (b) otherwise capable of being prevented through timely notice of an unsafe condition to the Owner."

§6.7.3  Add the following to the end of Subparagraph 6.7.3:

> "for reasons other than the Construction Manager's failure to provide or maintain such insurance or the Construction Manager's breach of the contracts for insurance."

§6.7.11  Add the words ", and shall be excluded from the Cost of the Work" at the end of the first sentence of §6.7.11.

§6.7.12  Add the words "60th day following" after the words "achieved on or before" in the first sentence of §6.7.12.

3

§6.8.1.6  Add the following as new Subparagraphs 6.8.1.7 through 6.8.1.11:

> "§6. 8.1.7      Costs incurred by the Construction Manager for overtime, extra shift work or similar premium pay shall not be deemed Costs of the Work if the need for such work is caused by an unexcused delay by the Construction Manager in the Construction Schedule.
>
> §6. 8.1.8      Any taxes on the income or profit of the Construction Manager, any real or personal property taxes, or any franchise or similar taxes or fees.
>
> §6. 8.1.9      Penalties for the Construction Manager's failure to comply with applicable laws and regulations.
>
> §6. 8.1.10      Losses and expenses sustained by the Construction Manager, Subcontractors or Sub-subcontractors, not compensated by insurance or otherwise, if such losses and expenses are due to infidelity or dishonesty on the part of any employee of the Construction Manager or its Subcontractors."

§6.9.1  Add the following to the end of Subparagraph 6.9.1:

> "The Construction Manager shall not obtain for its own benefit any discounts, rebates or refunds in connection with the Work prior to providing the Owner with seven (7) days prior written notice of the potential discount, rebate or refund and an opportunity to furnish funds necessary to obtain such discount, rebate or refund on behalf of the Owner in accordance with the requirements of this Section 6.9."

§6.9.3  Add the following as a new Subparagraph 6.9.3:

> §6.9.3  Whenever Construction Manager has been paid, as a Cost of the Work, amounts that are recoverable from any other source (*e.g.*, a Subcontractor, its insurer, surety or other third party), Construction Manager shall diligently pursue such recovery and shall credit Owner with any amounts recovered (less Construction Manager's attorneys' fees and other costs of collection).

§6.11  Add the following at the end of Paragraph 6.11:

> §6.11  If an audit or examination of the Construction Manager's records discloses overcharges of any nature by the Construction Manager, then, at the Owner's option, either the Construction Manager shall immediately reimburse the Owner for such overcharge or the Owner may deduct the amount of such overcharges from amounts otherwise owed by the Owner to the Construction Manager.

ARTICLE 7

CONSTRUCTION PHASE

§7.1      Progress Payments.

4

§7.1.1    Amend Subsection 7.1.1 by adding the phrase "and approved by the Owner," after the word "Construction Manager" in the first line thereof.

7.1.4    Add the following to the end of Subparagraph 7.1.4:

§7.1.4    Without limiting the foregoing, the Construction Manager shall submit to the Owner with each Application for Payment, (a) an affidavit listing all persons or entities performing any of the Work; (b) lien waivers for all Subcontractors, Sub-subcontractors and suppliers who furnished labor or materials for the Project through the date of the last payment, except in the case of final payment, in which case the lien waiver shall be through the date of final payment, (c) a revised Construction Schedule, updated to reflect actual conditions in accordance with the requirements of the General Conditions; (d) any other documents required by the Contract Documents or the Specifications or reasonably required by the Owner to evidence that payments have appropriately been made to all Subcontractors and material suppliers; and (e) any other documentation required to be delivered by Tenant under that certain lease (the "Lease") dated as of April 9, 2014 between Owner as the "tenant" thereunder, and 417 Fifth Avenue LLC, as the "landlord" thereunder ("Landlord"), as the same is hereafter amended. Contractor acknowledges the receipt of a true and complete copy of said Lease from which certain financial terms have been redacted.

§7.1.7    Delete all of the inserted text following the first sentence thereof (it being the intention that 10% retainage requirement shall not be reduced, in accordance with the Lease), and add the following:

"Each Application for Payment shall additionally be accompanied by such other instruments, documents, and information as may be required by the provisions of Article 46 of the Lease and the Contract Documents or otherwise reasonably requested by the Owner or any equity or debt financier providing equity capital or debt financing in connection with the Project (collectively, the "Financiers"), including, without limitation, lien releases from the Construction Manager, all Contractors, and all Subcontractors. Notwithstanding any failure by the Construction Manager to adhere to the Construction Schedule, the Owner reserves the right to make Progress Payments requested in any Application for Payment; provided, however, no such Progress Payment by the Owner shall constitute a waiver of the foregoing condition precedent with respect to any other Application for Payment nor shall such Progress Payment constitute a waiver of the Construction Manager's default relative thereto."

§7.1.11    Add the following as a new Subparagraph 7.1.11:

§7.1.11    Payments may be withheld on account of (a) disputes regarding amounts due or regarding claims made by the Construction Manager or any Subcontractor, Sub-subcontractor or supplier to make payments properly; and (b) as otherwise provided in the Contract Documents and/or the Lease. The Construction Manager shall not have the right to stop the Work, slow down

5

the Work or terminate the Contract as a result of payments withheld for any of the foregoing reason (provided that payment is made for all undisputed amounts). However, such withholding shall be subject to the dispute resolution procedures of the Contract Documents.

§7.2.1.3    After "issued be the Architect;" insert the following:

"and all conditions necessary for Substantial Completion have been satisfied and a final Certificate of Occupancy, if applicable, has been issued, and all conditions to the final payment of the Work under the Lease have been satisfied"

§7.2    Add the following new Sections 7.2.5, 7.2.6, 7.2.7:

§7.2.5    Provided that the Owner has otherwise made payments as required by the Contract, the Owner may withhold the amount of any mechanic's or materialmen's liens filed with respect to the Work, together with attorneys', consultant and expert witness fees and costs incurred or reasonably estimated to be incurred as a result of such lien.  Such amount may be withheld until the lien is removed or until the Construction Manager posts a bond discharging such lien at the Construction Manager's expense.  Upon such removal or discharge of lien, the Owner shall pay to the Construction Manager any amount so withheld, less the Owner's attorneys', consultant and expert witness fees and costs incurred as a result of such lien.

§7.2.6 The Owner may withhold such amounts as the Owner may deem reasonable to cover any corrective work, whether minor or major, or defective material, until such corrective work has been completed or such defective materials have been replaced by the Construction Manager.  Amounts so withheld shall be paid to the Construction Manager on a monthly basis upon correction of the nonconforming Work.

§7.2.7  As conditions precedent to receiving its Final Payment, the Construction Manager shall satisfy all of the following conditions:

(a) The Construction Manager has fully performed and completed its obligations under, and consistent with the terms of, the Contract Documents and the applicable provisions of the Lease;

(b) All necessary permits which are the Construction Manager's responsibility, including but not limited to an amended certificate of occupancy, have been obtained in order to allow the Owner to use the Project for its intended use;

(c) The Construction Manager has certified to the Owner (1) the names of all consultants, Architects, engineers, Contractors, Subcontractors, suppliers and vendors involved in providing labor and materials in the completion of the Work; and (2) the amounts payable to such consultants, Architects, engineers, Contractors, Subcontractors, suppliers and vendors for their work and the amounts actually paid or remaining to be paid by the Construction Manager

6

(as the case may be) to such consultants, Architects, engineers, Contractors, Subcontractors and suppliers and vendors;

(d) The Construction Manager has provided satisfactory proof that all claims, including taxes and union dues, if any, arising out of the Work and any liens arising therefrom, which have been filed or recorded against the Project, have been released or bonded off, or sufficient funds have been withheld to discharge such claims;

(e) The Construction Manager has turned over to the Owner all operation manuals, parts lists, repair sources and logs of consultants, Architects, engineers, Contractors, Subcontractors, suppliers and vendors involved in each portion of the applicable Work providing operating manuals;

(f) The Construction Manager has provided to the satisfaction of the Owner two (2) complete set of "as built" drawings, records, and related data, including all available field notes of all of the Work (such "as built" drawings and all other material to be provided hereunder shall be provided in CADD or equivalent format, in hard copy and in soft copy in pdf format);

(g) The Construction Manager has turned over to the Owner all guarantees and warranties to which the Owner is entitled under the Contract Documents;

(h) The Construction Manager has performed a practical orientation and provided physical operating instructions for all materials, systems and equipment to the satisfaction of the Owner's operating staff; and

(i) The Construction Manager has provided the Owner with copies of all tests (including air balancing tests) and special inspections required to be performed by the Construction Manager pursuant to the Contract Documents."

§7.3.2 <u>Delay by the Owner</u>.  In the event of any delay in the performance of the Contract occasioned by any act or failure to act of the Owner, its parent, or any of its affiliates, subsidiaries, officers, directors, trustees, employees, architects, engineers or other representatives, or because of any injunctions which may be brought against the Owner or its representatives, the Construction Manager agrees to use its best efforts to mitigate any and all damages, costs, expenses, and fees arising from and/or caused by the same."

ARTICLE 8

INSURANCE AND BONDS

Article 8        Add to the second sentence of Article 8: ", and shall comply with all insurance requirements under the Lease."

ARTICLE 10

7

<u>TERMINATION OR SUSPENSION</u>

§10.2.3        Delete the following language from Subparagraph 10.2.3: "except that the Construction Manager's Fee shall be calculated as if the Work had been fully completed by the Construction Manager, including a reasonable estimate of the Cost of the Work for Work not actually completed".

ARTICLE 11

<u>OTHER CONDITIONS AND SERVICES</u>

§11.5.  Add the following as new Paragraph §11.5.~~23~~-11.5.7:

~~LIQUIDATED DAMAGES. Time being of the essence, it is recognized by Construction Manager that the hardship to the Owner which would result from failure to achieve Substantial Completion on or before the date set forth in the attached schedule (subject to adjustment via Owner approved change order) would be significant and difficult to quantify. In the event Substantial Completion is not achieved on or before the date which is two (2) weeks after the Substantial Completion date (such two (2) week period to be known as "the grace period") Construction Manager shall pay to the Owner as a liquidated damage, and not as a penalty, the sum of Two Thousand dollars ($2,000) per day from that time until the date upon which Substantial Completion is actually achieved. Further, in the event the Construction Manager achieves Substantial Completion on or before the date scheduled for Substantial Completion, Construction Manager shall be awarded an "Early Completion Bonus" of Two Thousand dollars ($2,000) per day for each day in advance of the Substantial Completion date that substantial completion is achieved.~~

§11.5.3  <u>Delivery of Completed Project</u>.  The Construction Manager agrees (i) that the Project shall be delivered to the Owner as of the date of Substantial Completion in good condition with all dedicated and supplementary systems (other than central building systems operated by the Landlord under the Lease) in good and operational condition, subject to only minor punch list items, and (ii) to warrant all building elements and systems in accordance with Article 3 of the General Conditions.

§11.5.4  <u>Conflict with Typewritten Provisions</u>.  In the event of a discrepancy between printed provisions of the "Standard Form of Agreement Between Owner and Construction Manager as Constructor (AIA Document A134-2009) and the General Conditions (AIA Document A201) on the one hand, and any Addendum on the other hand, the Addendum shall govern.

§11.5.3  <u>Attorneys' Fees</u>.  If either party commences an action against the other to enforce any of the terms of the Contract Documents or because of the breach by either party of any of the terms of the Contract Documents, the losing or defaulting party, whether by out-of-court settlement or final judgment, shall pay to the prevailing party the costs and expenses incurred in connection with the prosecution or defense of such action and any appeals in connection therewith, including

8

accountants', consultants', expert witness and reasonable attorneys' fees and costs. Any judgment or order entered in any final judgment shall contain a specific provision providing for the recovery of all costs and expenses of suit, including, without limitation, actual attorney's fees and costs and expenses incurred in connection with (i) enforcing, perfecting and executing such judgment; (ii) post-judgment motions; (iii) contempt proceedings; (iv) garnishment, levee, and debtor and third-party examination; (v) discovery; and (vi) bankruptcy litigation.

§11.5.4    Requirement for Written Approval.    The Construction Manager acknowledges and agrees that the prior written consent of the Owner is required for each aspect of the Work contemplated by the Construction Manager which would alter the existing scope of the Work or is contrary to the requirements of the Work or the building permit(s) covering the Work.

§11.5.5    Prohibited Discrimination.  The Construction Manager shall comply with all applicable federal and state laws prohibiting discrimination against any person on the grounds of race, color, national origin, religion, creed, sex, sexual orientation, age, genetic information or handicap in employment or any condition of employment with the Construction Manager or in participation in the benefits of the services provided by the Construction Manager under the Contract.

§11.5.6    Compliance with All Laws.  The Construction Manager shall observe and comply with all laws, ordinances, codes, rules and regulations of the federal, state, municipal or county governments, now in force or which may hereinafter be in force (including, without limitation, the New York City Buildings Department).    The Construction Manager warrants this it is properly licensed to perform the work and shall continue to be properly licensed throughout the performance of the Contract.

§11.5.7    Confidential Information.  All information and data relating to the Owner's business, including, without limitation, financial information, operations information, strategic and tactical planning information, and marketing plans, shall be treated as confidential by the Construction Manager and shall not, unless otherwise required by law, be disclosed to any third party by the Construction Manager without the Owner's prior written consent.  The Construction Manager shall treat as confidential all other knowledge of the Owner's business, development plans, programs, documentation, techniques, trade secrets and systems.    Any information, data, report, record, summary table, map or study given to or prepared or assembled by the Construction Manager under the Contract shall be kept confidential and shall not be made available to any individual or organization by the Construction Manager without the prior written approval of the Owner.  The Construction Manager further agrees that the disclosure of any of such confidential information in violation of this Section would irreparably harm the Owner and that in the event of a breach or threatened breach of this Section, the Owner shall be entitled to a temporary and/or preliminary restraining order and/or injunction restraining and enjoining the Construction Manager from disclosing all or any part of such confidential information.  The Owner shall also be entitled to recovery of appropriate damages, including, but not limited to, reasonable attorneys' fees.

9

# ▓AIA® Document A201™ – 2007

## *General Conditions of the Contract for Construction*

for the following PROJECT:
*(Name and location or address)*
Premier Exhibitions 417 Fifth Ave., Basement, 1st fl., Mezzanine & 2nd fl.
Conversion of Shell Space into Exhibition Space on 1st, Mezzanine & 2nd fls.
New York, NY

THE OWNER:
*(Name and address)*
Premier Exhibitions
3340 Peachtree Road, NE, Suite 900
Atlanta, GA   30326
Attn:  Michael Little

THE ARCHITECT:
*(Name and address)*
Gensler
1230 Ave. of the Americas
New York, NY   10020

TABLE OF ARTICLES

1      GENERAL PROVISIONS

2      OWNER

3      CONTRACTOR

4      ARCHITECT

5      SUBCONTRACTORS

6      CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7      CHANGES IN THE WORK

8      TIME

9      PAYMENTS AND COMPLETION

10     PROTECTION OF PERSONS AND PROPERTY

11     INSURANCE AND BONDS

12     UNCOVERING AND CORRECTION OF WORK

13     MISCELLANEOUS PROVISIONS

14     TERMINATION OR SUSPENSION OF THE CONTRACT

15     CLAIMS AND DISPUTES

ADDITIONS AND DELETIONS:
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                              (1647723841)

Init.

/

1

INDEX
(Numbers and Topics in Bold are Section Headings)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.4.2, 13.7.1, 14.1, 15.2
Addenda
1.1.1, 3.11.1
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
Administration of the Contract
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10, 4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
Architect, Definition of
**4.1.1**
Architect, Extent of Authority
2.4.1, 3.12.7, 4.1, 4.2, 5.2, 6.3.1, 7.1.2, 7.3.7, 7.4, 9.2.1, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4.1, 9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2

Architect's Additional Services and Expenses
2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4.1, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3.1, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2.1, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7.1, 11.3.9, 11.3.10, 13.1.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                      (1647723841)

Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1,
9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8,
5.2.3, 7.1.2, 7.1.3, 7.2, 7.3.2, 7.3.6, 7.3.9, 7.3.10,
8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9,
12.1.2, 15.1.3
**Change Orders, Definition of**
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, 7.4.1, 8.3.1,
9.3.1.1, 11.3.9
Claims, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3.1, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**,
15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.4, 6.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1,
15.1.4
**Commencement of the Work, Definition of**
**8.1.2**
**Communications Facilitating Contract**
**Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1,
9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**

Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
12.2, 13.7
Compliance with Laws
1.6.1, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4,
10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6,
14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1,
9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY**
**SEPARATE CONTRACTORS**
1.1.4, 6
**Construction Change Directive, Definition of**
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**,
9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
5.4, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
Contract, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR**
**SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
**Contract Documents, The**
**1.1.1**
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents, Definition of**
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4,
9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4,
15.2.5
Contract Sum, Definition of
**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4,
8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7.1, 10.3.2, 12.1.1, 14.3.2,
15.1.5.1, 15.2.5
**Contract Time, Definition of**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0864915732_1 which
expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                    (1647723841)

Init.

/

3

**8.1.1**
| CONTRACTOR
3
Contractor, Definition of
**3.1, 6.1.2**
**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.3.7, 14.1, 14.2.1.1,
**Contractor's Liability Insurance**
| **11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1,
3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2,
6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6,
10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
| 7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, **3.17**
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
Cost, Definition of
7.3.7

Costs
2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6,
11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3,
12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4.1, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work, Definition of**
**8.1.2**
**Date of Substantial Completion, Definition of**
**8.1.3**
Day, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2.1, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6,
9.8.2, 9.9.3, 9.10.4, 12.2.1
**Defective Work, Definition of**
**3.5.1**
Definitions
1.1, 2.1.1, 3.1.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2., 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4.1, **8.3**, 9.5.1, 9.7.1,
10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3.1, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings, Definition of**
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0564915732_1 which
expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                            (1647723841)

4

1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13.1,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5.1,
3.7.1, 3.10.1, 3.12, 3.14, 4.2.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4.1, 9.5.1, 9.7.1,
10.3.2, 10.4.1, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(*See* Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3.1, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
1
**Governing Law**
13.1
Guarantees (*See* Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17.1, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2.1, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 15.1.3
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4.1
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2
**Instruments of Service, Definition of**
**1.1.7**

Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, **11**
**Insurance, Boiler and Machinery**
11.3.2
**Insurance, Contractor's Liability**
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
9.3.2, 11.4.1.4
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
13.6
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13.1, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1.1, 13.4, 13.5.1, 13.5.2,
13.6.1, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3.1, 3.2.2, 3.5.1, 3.12.10, 3.17.1, 3.18.1, 4.2.6,
4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3,
11.1.2, 11.2.1, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3.1, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2.1, 9.3.1,
9.3.3, 9.4.1, 9.5, 9.6, 9.7.1, 9.8, 9.9, 9.10, 11.1.3,
11.3.1.5, 11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
**Loss of Use Insurance**
11.3.3

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                  (1647723841)

Init.

/

Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5.1, 3.8.2, 3.8.3, 3.12,
3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2,
9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1,
14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**,
15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**
**MISCELLANEOUS PROVISIONS**
**13**
Modifications, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7.1,
10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3,
9.10.4, 12.2.1
Notice
2.2.1, 2.3.1, 2.4.1, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1,
9.7.1, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2.1, 13.3,
13.5.1, 13.5.2, 14.1, 14.2, 15.2.8, 15.4.1
**Notice, Written**
2.3.1, 2.4.1, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7.1,
9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3**, 14,
15.2.8, 15.4.1
**Notice of Claims**
3.7.4, 4.5, 10.2.8, **15.1.2**, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1,
13.5.2, 14.3.1
**OWNER**
**2**
Owner, Definition of
**2.1.1**
**Owner, Information and Services Required of the**

2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2.1, 11.3, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3.1, 2.4.1, 3.4.2, 3.8.1, 3.12.10, 3.14.2,
4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3.1,
7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4,
9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2,
12.3.1, 13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
**Owner's Loss of Use Insurance**
**11.3.3**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to**
**Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications**
**and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11.1, 3.17.1,
4.2.12, 5.3.1
**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5
Patching, Cutting and
**3.14**, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.9, 9.2.1, **9.3**, 9.4, 9.5, 9.6.3, 9.7.1, 9.8.5,
9.10.1, 14.2.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5,
12.3.1, 13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, 11.4.9, **11.4**
Payments, Progress
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**PAYMENTS AND COMPLETION**
**9**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                      (1647723841)

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2
PCB
10.3.1
**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, 11.4.9, **11.4**
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, 3.7, 3.13, 7.3.7.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
Project, Definition of the
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14, 15.2.8, 15.4
Rejection of Work
3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by Contractor
3.12

**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5.1, 3.7.4, 3.15.2, 4.2.6, 4.5, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, **13.4**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.4
Samples, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
9.2, 9.3.1
Schedules, Construction
1.4.1.2, 3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 11.4.7, 12.1.2
**Shop Drawings, Definition of**
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications, Definition of the**
**1.1.6**
**Specifications, The**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
**Subcontractor, Definition of**
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 11.4.7, 11.4.8, 14.1, 14.2.1

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                              (1647723841)

Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3,
9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, 11.4.5, **11.3.7**
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3,
12.2, 13.7
**Substantial Completion, Definition of**
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5.1, 7.3.8
**Sub-subcontractor, Definition of**
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 11.4.9, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE
CONTRACT**
**14**
**Tests and Inspections**

3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4.1, **8.3**, 9.5.1, 9.7.1,
10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
4.4, 4.5, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1,
9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3,
11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14, 15.1.2,
15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF
WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 11.4.7, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1,
13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, 11.4.5, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7.1
Weather Delays
15.1.5.2
**Work, Definition of**
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which
expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                    (1647723841)

4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7,
9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4, **13.3**,
14, 15.4.1

Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
14.3.1, 15.1.2

**Init.**

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                    (1647723841)

ARTICLE 1    GENERAL PROVISIONS
§ 1.1 BASIC DEFINITIONS
§ 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

§ 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

§ 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

§ 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

§ 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

§ 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

§ 1.1.7 INSTRUMENTS OF SERVICE
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

§ 1.1.8 INITIAL DECISION MAKER
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

§ 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                          (1647723841)

10

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**§ 1.3 CAPITALIZATION**
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

**§ 1.4 INTERPRETATION**
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

**§ 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**
**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

**§ 1.6 TRANSMISSION OF DATA IN DIGITAL FORM**
If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

**ARTICLE 2    OWNER**
**§ 2.1 GENERAL**
**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

**§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER**
**§ 2.2.1** Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                (1647723841)

the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.2.4 The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

### § 2.3 OWNER'S RIGHT TO STOP THE WORK
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

### § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

### ARTICLE 3    CONTRACTOR
### § 3.1 GENERAL
§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                    (1647723841)

**12**

**§ 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR**
**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

**§ 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES**
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

**§ 3.4 LABOR AND MATERIALS**
**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery,   transportation, and other facilities and services

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                    (1647723841)

necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

## § 3.5 WARRANTY
The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

## § 3.6 TAXES
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect. However, if applicable, the Owner agrees to timely execute a Certificate of Capital Improvement (CCI) for any tax exemption permitted by law.

## § 3.7 PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS
§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded; this obligation expressly excludes responsibility for any "Controlled Inspections" required pursuant to Title 1 RCNY §101-06 (2008) which must be performed by a registered design professional. It is understood and agreed that although the Contractor will neither apply for nor pay for permits it will pick up permits from the New York City Department of Buildings

§ 3.7.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

§ 3.7.3 If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

§ 3.7.4 Concealed or Unknown Conditions. If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                          (1647723841)

**14**

§ 3.7.5 If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

§ 3.8 ALLOWANCES
§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents,
  .1  allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
  .2  Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and
  .3  whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

§ 3.9 SUPERINTENDENT
§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

§ 3.9.2 The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the name and qualifications of a proposed superintendent. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.

§ 3.9.3 The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or withheld.

§ 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES
§ 3.10.1 The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

§ 3.10.2 The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                      (1647723841)

15

§ **3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

§ **3.11 DOCUMENTS AND SAMPLES AT THE SITE**
The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

§ **3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES**
§ **3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ **3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ **3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ **3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

§ **3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

§ **3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

§ **3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

§ **3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

§ **3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                          (1647723841)

§ 3.12.10 The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

## § 3.13 USE OF SITE
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

## § 3.14 CUTTING AND PATCHING
§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

§ 3.14.2 The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## § 3.15 CLEANING UP
§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

## § 3.16 ACCESS TO WORK
The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a

**Init.**

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                        (1647723841)

patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

### § 3.18 INDEMNIFICATION

§ 3.18.1 To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18.

§ 3.18.2 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

### ARTICLE 4    ARCHITECT
### § 4.1 GENERAL

§ 4.1.1 The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

§ 4.1.3 If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

### § 4.2 ADMINISTRATION OF THE CONTRACT

§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate For Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

§ 4.2.2 The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

§ 4.2.3 On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:26:05 on 01/19/2015 under Order No.0664916732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                      (1647723841)

**§ 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION**

Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**§ 4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**§ 4.2.6** The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                    (1647723841)

19

§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ 4.2.14 The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

ARTICLE 5    SUBCONTRACTORS
§ 5.1 DEFINITIONS
§ 5.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

§ 5.1.2 A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Architect requires additional time for review. Failure of the Owner or Architect to reply within the 14 day period shall constitute notice of no reasonable objection.

§ 5.2.2 The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ 5.2.3 If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

§ 5.2.4 The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

§ 5.3 SUBCONTRACTUAL RELATIONS
By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:26:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                     (1647723841)

20

Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

### § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS

§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

    .1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and

    .2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

§ 5.4.2 Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

§ 5.4.3 Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

### ARTICLE 6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

§ 6.1.1 The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

§ 6.1.2 When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

§ 6.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

§ 6.1.4 Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY

§ 6.2.1 The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                (1647723841)

the Owner's or separate contractors completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ 6.2.3 The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ 6.2.4 The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner, separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

§ 6.3 OWNER'S RIGHT TO CLEAN UP
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

ARTICLE 7    CHANGES IN THE WORK
§ 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

§ 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
    .1    The change in the Work;
    .2    The amount of the adjustment, if any, in the Contract Sum; and
    .3    The extent of the adjustment, if any, in the Contract Time.

§ 7.3 CONSTRUCTION CHANGE DIRECTIVES
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
    .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
    .2    Unit prices stated in the Contract Documents or subsequently agreed upon;
    .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:26:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                    (1647723841)

.4   As provided in Section 7.3.7.

§ **7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ **7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ **7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

§ **7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

  .1   Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;
  .2   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;
  .3   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;
  .4   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and
  .5   Additional costs of supervision and field office personnel directly attributable to the change.

§ **7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

§ **7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

§ **7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

### § 7.4 MINOR CHANGES IN THE WORK
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                    (1847723841)

**23**

ARTICLE 8   TIME
§ 8.1 DEFINITIONS
§ 8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

§ 8.1.2 The date of commencement of the Work is the date established in the Agreement.

§ 8.1.3 The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

§ 8.1.4 The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

§ 8.2 PROGRESS AND COMPLETION
§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

§ 8.3 DELAYS AND EXTENSIONS OF TIME
§ 8.3.1 If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Article 15.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

ARTICLE 9   PAYMENTS AND COMPLETION
§ 9.1 CONTRACT SUM
The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

§ 9.2 SCHEDULE OF VALUES
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 9.3 APPLICATIONS FOR PAYMENT
§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2., for completed portions of the Work. Such application shall be notarized, if required, and, except in the case of Stipulated Sum contracts, supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                      (1647723841)

§ **9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ **9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

§ **9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

§ **9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

§ **9.3.4 Trust Funds.** Any and all funds payable to Contractor hereunder are declared to constitute trust funds in the hands of Contractor, to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the Work, to claims for utilities furnished and taxes imposed, and to the payment of premiums on surety bonds and other bonds before application to any other purpose.

§ **9.4 CERTIFICATES FOR PAYMENT**
§ **9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

§ **9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

§ **9.5 DECISIONS TO WITHHOLD CERTIFICATION**
§ **9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                                (1647723841)

such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

.1     defective Work not remedied;

.2     third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3     failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

.4     reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5     damage to the Owner or a separate contractor;

.6     reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7     repeated failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.

## § 9.6 PROGRESS PAYMENTS

**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                 (1647723841)

### § 9.7 FAILURE OF PAYMENT

If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

### § 9.8 SUBSTANTIAL COMPLETION

§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

### § 9.9 PARTIAL OCCUPANCY OR USE

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

§ 9.9.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                          (1647723841)

§ **9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

§ **9.10 FINAL COMPLETION AND FINAL PAYMENT**
§ **9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

§ **9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ **9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

§ **9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
   .1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
   .2    failure of the Work to comply with the requirements of the Contract Documents; or
   .3    terms of special warranties required by the Contract Documents.

§ **9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY**
§ **10.1 SAFETY PRECAUTIONS AND PROGRAMS**
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

§ **10.2 SAFETY OF PERSONS AND PROPERTY**
§ **10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to
   .1    employees on the Work and other persons who may be affected thereby;

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                (1647723841)

.2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ 10.2.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ 10.2.7 The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

## § 10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY

If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

## § 10.3 HAZARDOUS MATERIALS

§ 10.3.1 The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos, lead paint, contaminated soils, toxic substances, mold, mildew, polychlorinated biphenyl (PCB) and toxic or any other hazardous substances ("Hazardous Materials"), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.   When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor.   The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shutdown, delay and start up, which adjustments shall be accomplished as provided in Article 12 of this Agreement

§ 10.3.2 Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                    (1647723841)

Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

§ 10.3.4 The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

§ 10.3.5 The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

§ 10.3.6 If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

### § 10.4 EMERGENCIES
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

### ARTICLE 11    INSURANCE AND BONDS
### § 11.1 CONTRACTOR'S LIABILITY INSURANCE
§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1    Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;

.2    Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

.3    Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

.4    Claims for damages insured by usual personal injury liability coverage;

.5    Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                    (1647723841)

      .6   Claims for damages because of bodily injury, death of a person or property damage arising out of
            ownership, maintenance or use of a motor vehicle;

      .7   Claims for bodily injury or property damage arising out of completed operations; and

      .8   Claims involving contractual liability insurance applicable to the Contractor's obligations under
            Section 3.18.

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents.

**§ 11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

**§ 11.1.4** The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

**§ 11.2 OWNER'S LIABILITY INSURANCE**
The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

**§ 11.3 PROPERTY INSURANCE**
**§ 11.3.1** Unless otherwise provided, the Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.   Any deductible under such "all risk" or equivalent policy shall be the responsibility of the party that provides such property insurance.

**§ 11.3.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**§ 11.3.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                 (1647723841)

**31**

shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.3.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.3.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.3.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

### § 11.3.2 BOILER AND MACHINERY INSURANCE
The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

### § 11.3.3 LOSS OF USE INSURANCE
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

§ 11.3.4 If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

§ 11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.3.6 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

### § 11.3.7 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise,

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                            (1647723841)

did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.3.8 A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.3.9 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.3.10 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

## § 11.4 PERFORMANCE BOND AND PAYMENT BOND
§ 11.4.1 The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

§ 11.4.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
## § 12.1 UNCOVERING OF WORK
§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

## § 12.2 CORRECTION OF WORK
## § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:26:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                      (1647723841)

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION

**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

### § 12.3 ACCEPTANCE OF NONCONFORMING WORK

If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13   MISCELLANEOUS PROVISIONS

### § 13.1 GOVERNING LAW

The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

### § 13.2 SUCCESSORS AND ASSIGNS

**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                                 (1647723841)

34

### § 13.3 WRITTEN NOTICE

Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES

§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

### § 13.5 TESTS AND INSPECTIONS

§ 13.5.1 Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

### § 13.6 INTEREST

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

### § 13.7 TIME LIMITS ON CLAIMS

The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law,

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                    (1647723841)

but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.

## ARTICLE 14    TERMINATION OR SUSPENSION OF THE CONTRACT
### § 14.1 TERMINATION BY THE CONTRACTOR
§ 14.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

  .1 Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
  .2 An act of government, such as a declaration of national emergency that requires all Work to be stopped;
  .3 Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or
  .4 The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ 14.1.3 If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages.

§ 14.1.4 If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

### § 14.2 TERMINATION BY THE OWNER FOR CAUSE
§ 14.2.1 The Owner may terminate the Contract if the Contractor

  .1 repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
  .2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
  .3 repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
  .4 otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 14.2.2 When any of the above reasons exist, the Owner, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

  .1 Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
  .2 Accept assignment of subcontracts pursuant to Section 5.4; and
  .3 Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                    (1647723841)

§ **14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ **14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

§ **14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE**
§ **14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ **14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent
.1     that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
.2     that an equitable adjustment is made or denied under another provision of the Contract.

§ **14.4 TERMINATION BY THE OWNER FOR CONVENIENCE**
§ **14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

§ **14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall
.1     cease operations as directed by the Owner in the notice;
.2     take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and
.3     except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ **14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

**ARTICLE 15   CLAIMS AND DISPUTES**
§ **15.1 CLAIMS**
§ **15.1.1 DEFINITION**
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ **15.1.2 NOTICE OF CLAIMS**
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

§ **15.1.3 CONTINUING CONTRACT PERFORMANCE**
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                                 (1647723841)

37

### § 15.1.4 CLAIMS FOR ADDITIONAL COST

If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME

§ 15.1.5.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

§ 15.1.5.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

### § 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES

The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

.1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 INITIAL DECISION

§ 15.2.1 Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

§ 15.2.2 The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

§ 15.2.3 In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

§ 15.2.4 If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                                  (1647723841)

**38**

§ **15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

§ **15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

§ **15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

§ **15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ **15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

§ **15.3 MEDIATION**
§ **15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

§ **15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

§ **15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ **15.4 ARBITRATION**
§ **15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ **15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0864915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                              (1647723841)

**39**

§ 15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

§ 15.4.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

### § 15.4.4 CONSOLIDATION OR JOINDER

§ 15.4.4.1 Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

§ 15.4.4.2 Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

§ 15.4.4.3 The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                    (1647723841)

## *Additions and Deletions Report for*
AIA® Document A201™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 14:25:05 on 01/19/2015.

### PAGE 1

Premier Exhibitions 417 Fifth Ave., Basement, 1st fl., Mezzanine & 2nd fl.
Conversion of Shell Space into Exhibition Space on 1st, Mezzanine & 2nd fls.
New York, NY

...

~~(Name, legal status and address)~~(Name and address)
Premier Exhibitions
3340 Peachtree Road, NE, Suite 900
Atlanta, GA    30326
Attn:   Michael Little

...

~~(Name, legal status~~ (Name and address)
Gensler
1230 Ave. of the Americas
New York, NY    10020

### PAGE 2

~~(Topics and numbers in bold are section headings.)~~(Numbers and Topics in Bold are Section Headings)

...

3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.4.2, ~~13.7,~~13.7.1, 14.1, 15.2

...

1.1.1, ~~3.11~~3.11.1

...

4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, ~~9.7,~~9.7.1, 9.10, 11.1.3

...

8.3.1, 11.3.10, ~~13.1,~~13.1.1, 15.3.2, **15.4**

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                          (1647723841)

1

~~2.4,~~ 2.4.1, 3.12.7, 4.1, 4.2, 5.2, ~~6.3,~~ 6.3.1, 7.1.2, 7.3.7, 7.4, ~~9.2,~~ 9.2.1, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1

...

2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, ~~7.4,~~ 7.4.1, 9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2

...

~~2.4,~~ 2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4

...

~~2.4, 3.1.3, 3.5,~~ 2.4.1, 3.1.3, 3.5.1, 3.10.2, 4.2.7

...

~~3.5,~~ 3.5.1, 4.2.6, 12.1.2, 12.2.1

...

3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, ~~6.3,~~ 6.3.1, 7.3.7, 7.3.9, 8.1.3, 8.3.1, ~~9.2,~~ 9.2.1, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.5.2, 15.2, 15.3

...

1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, ~~3.5,~~ 3.5.1, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2

...

~~9.7,~~ 9.7.1, 11.3.9, 11.3.10, ~~13.1,~~ 13.1.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.4.1

**PAGE 3**

4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, ~~9.7,~~ 9.7.1, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3

...

1.1.1, ~~2.4,~~ 2.4.1, 3.4.2, 3.7.4, 3.8.2.3, ~~3.11,~~ 3.11.1, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2, 15.1.3

...

2.2.1, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, 7.4.1, 8.3.1, 9.3.1.1, 11.3.9

...

3.2.4, 6.1.1, ~~6.3,~~ 6.3.1, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4

...

3.2.4, ~~3.7.4, 6.1.1,~~ 3.7.4 6.1.1, 8.3.2, 10.3.2, **15.1.5**

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                          (1647723841)

2

1.6, 1.6.1, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3

...

3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1

**Contract Documents, The**
**1.1.1**

...

3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 9.7.1, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5

PAGE 4

3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1, 14.2.1.1,

...

1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.5.1, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1

...

3.2.1, 3.2.2, 3.5, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2

...

3.3.2, 3.18, 5.3, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8

...

2.4, 2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14

...

3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 10.4.1, 11.3.1, 12.2.4

...

3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.2.1, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4, 15.1, 15.2

...

2.3, 2.4, 3.5, 2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1

**Defective Work, Definition of**
**3.5.1**

1.1, 2.1.1, 3.1.1, 3.5, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1

...

3.2, 3.2., 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 7.4.1, 8.3, 9.5.1, 9.7, 10.3.2, 10.4, 9.7.1, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                      (1647723841)

3

~~6.3,~~ 6.3.1, 7.3.9, 15.1, 15.2

**PAGE 5**

1.1.3, 1.1.6, 3.4, ~~3.5,~~ 3.5.1, 3.8.2, 3.8.3, 3.12, ~~3.13,~~ 3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2

...

1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, ~~3.5,~~ 3.5.1, 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3

...

3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, ~~7.4, 9.5.1, 9.7, 10.3.2, 10.4,~~ 7.4.1, 9.5.1, 9.7.1, 10.3.2, 10.4.1, 14.3, 15.1.5, 15.2.5

...

4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5, ~~12.3,~~ 12.3.1, 14.2.4, 14.4.3

...

~~3.17,~~ 3.17.1, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2, 11.3.7

...

2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, ~~11.2,~~ 11.2.1, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3

...

**10.2.8**, ~~10.4~~ 10.4.1

...

~~9.3.2~~ 9.3.2, 11.4.1.4

...

Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
~~9.9.1~~ 11.4.10

...

1.1.3, 1.1.6, **3.4**, ~~3.5,~~ 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2

...

1.5, 3.2.3, 3.6, 3.7, 3.12.10, ~~3.13,~~ 3.13.1, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1.1, 11.3, ~~13.1,~~ 13.1.1, 13.4, 13.5.1, 13.5.2, ~~13.6,~~ 13.6.1, 14, 15.2.8, 15.4

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes: (1647723841)

4

~~2.3, 3.2.2, 3.5, 3.12.10, 3.17,~~ <u>2.3.1, 3.2.2, 3.5.1, 3.12.10, 3.17.1,</u> 3.18.1, 4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2, ~~11.2,~~ <u>11.2.1,</u> 11.3.7, 12.2.5, 13.4.2

...

2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 5.2, ~~5.3,~~ <u>5.3.1,</u> 5.4.1, 6.2.4, 7.3, 7.4, 8.2, ~~9.2,~~ <u>9.2.1,</u> 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, ~~9.7,~~ <u>9.7.1,</u> 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5, 11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15

**PAGE 6**

1.1.3, 1.1.6, 1.5.1, 3.4.1, ~~3.5,~~ <u>3.5.1,</u> 3.8.2, 3.8.3, 3.12, ~~3.13,~~ <u>3.13.1,</u> 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2

...

1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, ~~9.7,~~ <u>9.7.1,</u> 10.3.2, 11.3.1

...

~~2.3, 2.4, 3.5,~~ <u>2.3.1, 2.4.1, 3.5.1,</u> 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1

...

2.2.1, ~~2.3, 2.4,~~ <u>2.3.1, 2.4.1,</u> 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, ~~9.7,~~ <u>9.7.1,</u> 9.10, 10.2.2, 11.1.3, <u>11.4.6,</u> 12.2.2.1, 13.3, 13.5.1, 13.5.2, 14.1, 14.2, 15.2.8, 15.4.1

...

~~2.3, 2.4,~~ <u>2.3.1, 2.4.1,</u> 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, ~~9.7,~~ <u>9.7.1,</u> 9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3,** 14, 15.2.8, 15.4.1

...

3.7.4, <u>4.5,</u> 10.2.8, **15.1.2,** 15.4

...

2.1.2, **2.2,** 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, ~~11.2,~~ <u>11.2.1,</u> 11.3, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3

...

1.5, 2.1.1, ~~2.3, 2.4,~~ <u>2.3.1, 2.4.1,</u> 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, ~~6.3,~~ <u>6.3.1,</u> 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, ~~12.3,~~ <u>12.3.1,</u> 13.2.2, 14.3, 14.4, 15.2.7

...

Owner's <u>Loss of Use Insurance</u>
<u>11.3.3</u>
<u>Owner's</u> Relationship with Subcontractors

...

1.1.1, 1.1.6, 1.1.7, **1.5,** 2.2.5, 3.2.2, ~~3.11, 3.17, 4.2.12, 5.3,~~ <u>3.11.1, 3.17.1, 4.2.12, 5.3.1</u>

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:26:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                    (1647723841)

4.2.5, 7.3.9, ~~9.2, 9.2.1,~~ **9.3**, 9.4, 9.5, 9.6.3, ~~9.7, 9.7.1,~~ 9.8.5, 10.1, 14.2.3, 14.2.4, 14.4.3

...

4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, ~~9.7, 9.7.1,~~ 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4

...

4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, ~~12.3,~~ 11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3

...

7.3.7.4, 9.6.7, 9.10.3, 11.4.9, **11.4**

PAGE 7

5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2

...

7.3.7.4, 9.6.7, 9.10.3, 11.4.9, **11.4**

...

**Project**, Definition of the

...

~~3.5, 3.5.1,~~ 4.2.6, 12.2.1

...

3.2.1, ~~3.5, 3.5.1,~~ 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1

...

3.3.2, 3.18, 4.2.3, ~~5.3, 5.3.1,~~ 6.1.3, 6.2, 6.3, 9.5.1, 10

...

1.1.2, 2.3, 2.4, ~~3.5, 3.5.1,~~ 3.7.4, 3.15.2, 4.2.6, 4.5, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, **13.4**, 14, 15.4

...

3.3.1, 4.2.2, 4.2.7, ~~5.3, 5.3.1,~~ **10.1**, 10.2, 10.4

...

1.4.1.2, 3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2

...

1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 11.4.7, 12.1.2

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                     (1647723841)

Specifications, Definition of the

...

~~Specifications~~Specifications, The

...

6.2.1, 9.3.2, 10.2.1.2, ~~10.2.4~~10.2.4, 11.4.1.4

...

**5.3,** 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 11.4.7, 11.4.8, 14.1, 14.2.1

**PAGE 8**

6.1.1, 11.4.5, **11.3.7**

...

3.4.2, ~~3.5,~~ 3.5.1, 7.3.8

...

5.4.1.1, 11.4.9, 14

...

3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, ~~11.4.1,~~11.4.1.1, 12.2.1, **13.5**

...

3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, ~~7.4,~~7.4.1, **8.3,** 9.5.1, ~~9.7, 10.3.2, 10.4,~~9.7.1, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5

...

2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 4.4, 4.5, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4

...

9.10.5, 11.4.7, 13.4.2, 15.1.6

...

9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6

...

6.1.1, 11.4.5, **11.3.7**

...

3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, ~~13.7~~13.7.1

**PAGE 9**

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                          (1647723841)

2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4, **13.3**, 14, 15.4.1

...

1.1.1, 2.3, 3.9, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2

**PAGE 10**

**§ 1.1.8** ~~INITIAL DECISION MAKER~~INITIAL DECISION MAKER

**PAGE 13**

**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, ~~water, heat, utilities,~~ transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**PAGE 14**

The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect. However, if applicable, the Owner agrees to timely execute a Certificate of Capital Improvement (CCI) for any tax exemption permitted by law.

**§ 3.7**
~~PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS~~PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS
**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations ~~concluded.~~concluded: this obligation expressly excludes responsibility for any "Controlled Inspections" required pursuant to Title 1 RCNY §101-06 (2008) which must be performed by a registered design professional. It is understood and agreed that although the Contractor will neither apply for nor pay for permits it will pick up permits from the New York City Department of Buildings

**PAGE 15**

.1    ~~Allowances~~allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

...

.3    ~~Whenever~~whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**PAGE 18**

**§ 3.18.1** To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is

Additions and Deletions Report for AIA Document A201™– 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                          (1647723841)

caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity ~~that~~ which would otherwise exist as to a party or person described in this Section 3.18.

...

§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate ~~for~~ For Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**PAGE 20**

§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Architect requires additional time for review. Failure of the Owner or Architect to reply within the ~~14-day~~ 14 day period shall constitute notice of no reasonable objection.

**PAGE 21**

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate ~~contractor's~~ contractors completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**PAGE 22**

§ 6.2.4 The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the ~~Owner or~~ Owner, separate contractors as provided in Section 10.2.5.

**PAGE 24**

§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section ~~9.2,~~ 9.2., for completed portions of the Work. Such application shall be notarized, if required, ~~and~~ and, except in the case of Stipulated Sum contracts, supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

**PAGE 25**

§ 9.3.4 Trust Funds. Any and all funds payable to Contractor hereunder are declared to constitute trust funds in the hands of Contractor, to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the Work, to claims for utilities furnished and taxes imposed, and to the payment of premiums on surety bonds and other bonds before application to any other purpose.

**PAGE 29**

§ 10.3.1 The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If ~~the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if~~ reasonable precautions will be inadequate to prevent foreseeable bodily injury or death

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                              (1647723841)

to persons resulting from a material or substance, including but not limited to ~~asbestos or polychlorinated biphenyl (PCB),~~ asbestos, lead paint, contaminated soils, toxic substances, mold, mildew, polychlorinated biphenyl (PCB) and toxic or any other hazardous substances ("Hazardous Materials"), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.  When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor.  The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shutdown, delay and start up, which adjustments shall be accomplished as provided in Article 12 of this Agreement

**PAGE 30**

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), ~~except to the extent~~ and provided that such damage, loss or expense is not due to the ~~fault or sole~~ negligence of ~~the~~ a party seeking indemnity.

**PAGE 31**

§ 11.1.4 The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's ~~consultants~~ Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

...

§ 11.3.1 Unless otherwise provided, the ~~Owner~~ Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.  Any deductible under such "all risk" or equivalent policy shall be the responsibility of the party that provides such property insurance.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                              (1647723841)

### Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Glen P. Kennedy, Assistant General Counsel for Structure Tone, Inc., hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 14:25:05 on 01/19/2015 under Order No. 0664915732_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2007, General Conditions of the Contract for Construction, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:25:05 on 01/19/2015 under Order No.0664915732_1 which expires on 02/27/2015, and is not for resale.
User Notes:                                                                                                                    (1647723841)

1

<u>SUPPLEMENTARY GENERAL CONDITIONS</u>

(A201-2007 EDITION)

THESE SUPPLEMENTARY GENERAL CONDITIONS modify, delete from and add to the General Conditions of the Contract for Construction, AIA Document A201-2007 edition. Where any Article, Paragraph, Subparagraph or Clause of the General Conditions is modified or deleted by this Supplement, the unaltered provisions of that Article, Paragraph, Subparagraph or Clause shall remain in effect. The following Articles, Paragraphs and Subparagraphs relate to the comparable Articles, Paragraphs and Subparagraphs of the General Conditions of the Contract for Construction.

1.2.4       new Subsection 1.2.4 as follows:

"§1.2.4 <u>Miscellaneous Definitions</u>.

(a) Where the words "equal", "approved equal", "equivalent", "satisfactory", "directed", "designated", "selected", "as required" and words of similar meanings are used, the written approval, selection, satisfaction, direction or similar action of the Owner is required. Said approval may be by facsimile copy sent to the Construction Manager's office and followed with a hard copy sent by mail to the Construction Manager's office, or by email or other electronic communication means sent to the Construction Manager's office.

(b) Words such as "shown", "indicated", "detailed", "noted", "schedule", or words of similar meaning shall mean that reference is made to the Shop Drawings unless stated otherwise.

(c) Where the word "required" and words of similar meaning are used, it shall mean "as required to properly complete the work and as required by the Contract Documents," unless stated otherwise.

(d) Where the words "provide" and "perform" are used, it is understood and intended to mean that the Construction Manager (or the Owner in the case of Owner furnished and installed equipment unless noted otherwise in the Contract Documents), at its expense, shall furnish and install the work, complete in place and ready for use, including furnishing of necessary labor, materials, tools, equipment, and transportation. These definitions apply the same to future, present, and past tenses, except the word "provided" may mean "contingent upon" where such is the context.

§1.4.1      <u>Interpretation.</u>

§1.4.1      Add new Subsection 1.4.1 as follows:

"§1.4.1 Any work which is reasonably inferable from the Design Criteria or any plans, specifications and other documents prepared by the Architect or which are part of the Contract, or otherwise reasonably necessary or is required in order to complete

E-1

the Work, is part of the Contract and shall be executed by the Construction Manager in the same manner and with the same character of materials as the work specified therein."

§3.2.1    Execution of Contract Documents.

§3.2.1    Add at the end of Subsection 3.2.1 the following:

"Such execution shall additionally constitute the Construction Manager's representation and warranty that it is skilled in and maintains the proper licenses for the design and the construction of the type called for by the Work contemplated under the Contract Documents, and that it has a sufficient number and quality of employees to accomplish the Work on or before the date set forth in the Agreement for Substantial Completion of the Work. The Construction Manager also confirms for the benefit of the Owner that it has examined the Project site prior to the commencement of the Work and also examined all conditions affecting the Work. The Construction Manager has no knowledge of any discrepancies, omissions, ambiguities, or conflicts in the Contract Documents (other than the items, if any, which the Construction Manager has already disclosed to the Owner in writing). In addition, the Construction Manager recognizes the extra degree of care required with respect to safety, protection of pedestrians, cleanliness of the site, health and other laws, and protection of existing utilities, adjacent areas and property in connection with a Project undertaken in the Fifth Avenue Special District. The Construction Manager has accounted for the impact of such circumstances in agreeing to the Contract Sum and the Contract Time."

§3.2.1.1    Add the following Subsection as a new Subsection 3.2.1.1:

"§3.2.1.1  Upon completion by the Architect and the Construction Manager of the drawings and specifications and approval thereof by the Owner, the Owner and the Construction Manager shall execute drawings and specifications as a record set and the Owner and the Construction Manager shall each retain one (1) copy."

§2.1    General.

§2.1.2    Add new Subsection 2.2.4 as follows:

"§2.2.4 The Owner is not responsible for, nor will it have control or charge of design, engineering, architecture, construction means, methods, techniques, sequences, procedures or for safety precautions and programs in connection with the Work, and will not be responsible for the Construction Manager's failure to carry out the Work in accordance with the Contract Documents."

§3.3    Supervision and Construction Procedures.

§3.3.3    Add the following at the end of Subsection 3.3.3:

"§3.3.3  Notwithstanding the foregoing, the Owner shall have the right to establish dates and times when the Work shall be performed and the Construction Manager shall cause the Work to be performed during those periods."

§3.3.4    Add new Subsections 3.3.4 through 3.3.13 as follows:

"§3.3.4  The Construction Manager has the responsibility to ensure that all material suppliers and Contractors, their agents, and employees adhere to the Contract Documents, and that they order materials on time, taking into account the current market and delivery conditions, and that they provide materials on time. The Construction Manager shall coordinate its Work with that of all others on the Project, including coordinating deliveries, storage, installations, and use of construction utilities.

§3.3.5  Any discrepancy or omission in the dimensions or elevations shown on the drawings and specifications or found in previous work which may prevent accurate layout or construction of the Work, shall immediately be reported by the Construction Manager to the Owner.  If the Construction Manager performs, permits, or causes performance of any Work when the Construction Manager knows or reasonably should have known that such discrepancy or omission exists, without first obtaining further instruction from the Owner, the Construction Manager shall bear any and all costs arising therefrom including, without limitation, the costs of correction thereof without increase or adjustment in the Contract Sum. Omissions from the drawings or specifications, or the misdescription of details of Work which are reasonably inferable in order to carry out the intent of the drawings and specifications, or which are customarily performed, shall not relieve the Construction Manager from performing such omitted or misdescribed details of the Work, and they shall be performed as if fully and correctly set forth and described in the drawings and specifications, at no additional cost to Owner.

§3.3.6  The Construction Manager shall be responsible for coordinating the Work of Contractors, Subcontractors and material suppliers so that the Work as a whole will conform to the construction schedule, Contract Time, and the Contract Documents. This coordination includes, but is not limited to, the following items of Work:

.1  The Construction Manager and Contractors shall be responsible for examining all drawings, all sections of the specifications, and all items of Addenda to inform themselves of the requirements applicable to their part of the Work.

.2  The Construction Manager shall supervise the taking of all measurements in the field necessary to insure the timely fabrication, delivery, and proper fitting together of the Work.

.3  The Construction Manager shall coordinate the Work of the various Contractors and Subcontractors to eliminate interferences, hindrances, delays, duplication, and gaps.

.4    The Construction Manager shall schedule the Work of each Contractor, Subcontractors and material supplier to avoid delays, hindrances, interferences, duplication, and gaps in the performance of the Work.

.5    The Construction Manager shall advise Contractors and Subcontractors as to features of construction required in their portion of the Work to receive, engage, and support parts of other Work, and of the easements and tolerances required by proper performance of the Work.  It is the Construction Manager's responsibility to insure that each Contractor or Subcontractor leaves its portion of the Work in proper condition to receive subsequent Work.

.6    The Construction Manager shall insure that provision for and placement of all Work by each Contractor and Subcontractor shall be accomplished on schedule and in conformity to the Contract Documents.

.7    The Construction Manager shall insure that each Contractor and Subcontractor furnishes and receives all drawings, specifications, templates, and other information required to properly perform its portion of the Work.

§3.3.7  The Construction Manager shall perform inspections to assure that the Work conforms to the Contract Documents, and the Construction Manager shall maintain and make available to the Owner adequate records of such inspections.

§3.3.8  As the job proceeds, the Construction Manager shall verify all grades, lines, levels, and dimensions indicated on the Drawings, and shall report all errors or inconsistencies to the Owner.  The Construction Manager shall not proceed until all errors and inconsistencies are corrected.

§3.3.9  The Construction Manager shall establish control points and bench marks adequate for the use of all trades for reference to performing all portions of the Work within the specified and indicated tolerances.  The Construction Manager shall remove, re-establish, and relocate control points and bench marks as appropriate.  The Construction Manager shall maintain such control points and bench marks in an undisturbed condition until final completion and final acceptance by the Owner of the Project.

§3.3.10  The Construction Manager agrees to perform and complete all Work in a professional and workmanlike manner with all new first-class materials, the title and ownership of which Construction Manager shall guarantee to be in the Owner's name free and clear of all liens and encumbrances.

§3.3.11   The Construction Manager agrees to secure and pay for all usual and customary permits, licenses and inspections relating to the Work.

§3.3.12 The Construction Manager agrees to take all reasonable precautions to protect the Work while in progress and to protect adjacent property from damage or injury.  The Construction Manager shall additionally take reasonable precautions for the

safety of, and shall provide reasonable protection to prevent damage, injury or loss to all persons and property.

§3.3.13   All of the Work shall be performed in a manner that will minimize any annoyance, interference or inconvenience to the occupants of the Building in which the Project Site is located."

§3.4        Labor and Materials.

§3.4.1      Add at the end of Subsection 3.4.1 the following:

"The Construction Manager shall use its best efforts to maintain labor peace for the duration of the project. During the Contract Time, the Construction Manager shall be responsible for the safe storage and protection against theft or damage of all tools and equipment owned by either the Construction Manager, Contractors or Subcontractors. All tools and equipment shall be removed from the project site upon the completion of the Work.   The Construction Manager shall remain the owner of any supplies, materials or equipment to be incorporated into the Work until such supplies, materials or equipment have been installed and accepted by the Owner.   The Construction Manager shall remain liable for loss or damage to any such supplies, materials or equipment while in transit and while being stored."

§3.4.3      Add at the end of Subsection 3.4.3 the following:

"or who will not work in harmony with other labor working on the Project.   The Construction Manager shall also be responsible for labor peace on the Project and shall at all times exert its best efforts and judgment as an experienced Construction Manager to adopt and implement policies and practices designed to avoid stoppages, slow downs, disputes or strikes."

§3.4.4      Add a new Subsection 3.4.4 as follows:

"§3.4.4   The Construction Manager shall ensure that all of the Work shall be performed by personnel qualified to engage in the activity and the services in which they participate and in a manner that shall minimize any interference or inconvenience to the Owner and its operations."

§3.5        Warranty.

§3.5.1      Delete the phrase "not inherent in the quality required or permitted by law or otherwise," from the third line of Subsection A.3.5.1. Add the following at the end of the Subsection: "The Construction Manager shall assign to the Owner all warranties received by the Construction Manager with respect to materials and equipment furnished under the Contract Documents.   Further, neither the Final Certificate of Payment or any provision in the Contract Documents, nor partial or entire occupancy of the site by the Owner shall constitute an acceptance of any Work not done in accordance with the Contract Documents nor relieve the Construction Manager of

liability in respect to any express warranties or responsibilities for faulty materials or workmanship."

§3.5.2    Add new Subsections 3.5.2 through 3.5.7 as follows:

"§3.5.2  As a condition precedent to final acceptance of the Work by the Owner and prior to the submission of the request for final payment, the Construction Manager shall warrant in writing to the Owner that it will repair or replace any or all Work, together with any other Work which may be displaced, damaged, or marred in so doing, that is deemed defective by the Owner without any additional expense to the Owner. All warranties shall be satisfactory in form and substance to the Owner and, unless otherwise stipulated in the Contract Documents, shall be for a period of one (1) year from the date of final acceptance of the Work or from the date of the last repair or corrective work performed by the Construction Manager, whichever date is later.

§3.5.3  The Construction Manager shall furnish to the Owner at the time of Substantial Completion a binder containing all warranty and guarantee forms as executed by each Contractor, Subcontractor, supplier, or vendor of materials and equipment furnished under the Contract Documents.

§3.5.4  Each warranty, guarantee or representation expressed in the Contract Documents or implied in law shall survive the acceptance of the Work and final payment to the Construction Manager by the Owner. Nothing contained in this Section A.3.5 shall be construed to establish a period of limitation with respect to any other obligation which the Construction Manager might have under the Contract Documents."

§3.6    Taxes.

§3.6.1    Add the following at the end of Subsection 3.6.1:

"The Construction Manager shall be responsible for payment of excise and gross receipts taxes, social security taxes, unemployment insurance, fringe benefits or other taxes in connection with the wages of the Construction Manager's employees. The Construction Manager shall indemnify, defend, and hold harmless the Owner and Indemnitees from and against claims, liabilities, damages, losses and expenses, including but not limited to attorney's fees, consultant and expert witness fees, arising out of or resulting from the Construction Manager's failure to pay such taxes, in accordance with the indemnification provisions of Section A.3.17."

§3.10    Construction Manager's Schedule.

§3.10.1    Add the following sentence at the end of Subsection 3.10.1: "Such revised schedule shall show the progress and the status of the Work and each activity. The Construction Manager shall submit a current revised schedule with each Application for Payment."

§3.10.4    Add new Subsections 3.10.4 and 3.10.5 as follows:

E-6

"§3.10.4   The Construction Manager shall hold weekly progress meetings at the Project site. Progress of the Work shall be reported in detail with reference to the construction schedule. Each Contractor shall have a competent representative to report the condition of its work and to receive information when required by the Owner.

§3.10.5  The Construction Manager shall prepare a monthly schedule summary report in a form and of sufficient detail and character as approved by the Owner.  The report as a minimum shall specify whether the Project is on schedule, and if not, the reasons therefor and the new schedule.  The Construction Manager shall also prepare a report not later than ten (10) calendar days after the Construction Manager Contract is awarded which shall include a complete list of consultants, Architects, engineers, Contractors, Subcontractors, suppliers, items to be purchased from the suppliers or fabricators, time required for fabrication, and the scheduled delivery dates for each item as then known by the Construction Manager.  Progress on the Work shall be reported in detail with reference to the construction schedule."

§3.13        Use of Site.

§3.13.1      Add new Subsection 3.13.1 as follows:

"§3.13.1   The Construction Manager shall coordinate the Construction Manager's operations with, and secure the approval of, the Landlord before using any portion of the Site.  The Construction Manager shall not disrupt, interfere with or disturb uses on property near the Site."

§3.15        Cleaning Up.

§3.15.3      Add new Subsections 3.15.3 and 3.15.4 as follows:

"§3.15.3  The Construction Manager shall be held responsible for all daily cleanup of construction materials and debris and building dust control. Cleanup shall include removal of materials and debris from the building and placement in a container or other proper disposal. Special consideration is required for the immediate removal and/or protection of material or debris which poses a hazard to the Owner's employees, agents, fixtures, and floor coverings (i.e., hazardous materials, broken glass, sawdust, materials that pose a tripping hazard, etc.), including utilization of protective coverings for newly installed floor covering and fixtures.

§3.15.4  In addition to the above cleaning, the Construction Manager shall perform the following final cleaning at completion of the Work:

.1  remove temporary protections;

.2   remove marks, stains, fingerprints, and other soil or dirt from painted, decorated, work;

.3  remove spots, mortar, plaster, soil, and paint from ceramic tile, marble, and other finish materials and wash or wipe clean;

.4  clean fixtures, cabinets, millwork, and equipment, removing stains, paint, dirt, and dust and leave in a clean, undamaged, and new condition;

.5  clean all metals in accordance with recommendations of the manufacturer; and

.6  clean resilient floors thoroughly with a well-rinsed mop containing only enough moisture to clean surface dirt or dust and buff dry by machine to bring the surfaces to sheen."

§6.1    Owner's Right to Perform Construction and to Award Separate Contracts.

§6.1.5    Add new Subsection 6.1.5 as follows:

"A.6.1.4 The Construction Manager shall coordinate its work with the work of all separate contractors and shall report promptly to the Owner any discrepancies or defects in the work of any separate contractor that renders connection and coordination of work unsuitable."

§7.1    Changes in the Work – General.

§7.1.1    Add at the end of Subsection 7.1.1 the following:  "No Change Order, Construction Change Directive or order for minor change in the Work shall be effective unless issued and executed as specified in this Article 7. The Construction Manager specifically agrees that if it proceeds on an oral order to change the Work, it shall waive any claim for additional compensation for such work and the Construction Manager shall not be excused from compliance with the Contract Documents. The requirements set forth in this Article A.7 are the essence of the Contract Documents. Accordingly, no course of conduct or dealings between the parties, no oral, express, or implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work shall be the basis for any claim to an increase in the Contract Sum or Contract Time."

§7.3    Construction Change Directives.

§7.3.7    Delete the phrase "as set forth in this Agreement, or if no such amount is set forth in the Agreement" from the fourth line of Subsection 7.3.7  Add, at the end of Subsection A.7.3.6 the following:

§7.3.8    Add a new Subsection 7.3.8:

"For purposes of this Subsection 7.3, the Construction Manager's overhead and profit shall be as set forth in §5.2.1. For work omitted, a credit will be allowed in the amount of the actual savings in cost, to be computed upon the same basis as for additional work, but without the application of the above percentages covering the Construction Manager's overhead and profit."

§7.3.8    Delete Subsection 7.3.8 in its entirety.

§8.3    <u>Delays and Extensions of Time</u>.

§8.3.4    Add new Subsection 8.3.4 as follows:

> "§8.3.4  Notwithstanding anything to the contrary contained herein, there will be no extensions of the Contract Time except under one or more of the circumstances listed below.  Such extension shall be granted for such reasonable time as the Owner may determine when critical path items are delayed or impacted.  In ruling on claims for extensions of the Contract Time, the Owner may take into account whether or not a given occurrence should, in fact, have any effect on the Construction Manager's ability to meet scheduled dates of Substantial Completion as well as the disruptive impact on the Construction Manager's ability to prosecute the Work in accordance with its intended plan including, but not limited to, anticipated level of productivity and level of staffing.  Circumstances to be considered are as follows:  (a) delay in progress due to an act of the Owner or the Owner's representatives (pursuant to the preceding Subsection A.8.3.1); (b) a Change Order or Construction Change Directive that contains an extension of the Contract Time approved by the Owner;  (c) civil unrest beyond the control of the Construction Manager that does, in fact, directly and critically affect the progress of the Work; provided, however, any such extension of time shall not exceed the number of calendar days or work stoppage directly resulting from such strike or civil unrest; (d) floods, hurricanes, high wind conditions, lightning, and/or earthquakes that substantially damage completed Work or stored materials, provided that an act of neglect of the Construction Manager did not contribute to such damage; and (e) labor disputes beyond the Construction Manager's control that affect the progress of the Work.  There shall be no extensions of the Contract Time due to inclement weather conditions (including rain but excluding floods and other conditions described in clause (d) above) unless such inclement weather conditions materially impact field activities on the critical path of the approved Construction Schedule and Construction Manager documents data substantiating such weather conditions in accordance with Section A.4.1.7.2.

§9.2    <u>Schedule of Values</u>.

§9.2.1    Add at the end of Subsection A.9.2.1 the following: "Said schedule of values shall be set forth on AIA Document G702A, Application and Certificate For Payment (or Owner approved equivalent), Continuation Sheet, with each major item of Work and each subcontracted item of Work shown as a single-line item.  Without limiting the generality of the foregoing, said schedule of values shall itemize the names of every Contractor, Subcontractor, material supplier and all other companies furnishing labor, services or materials in connection with the work, listing the amounts due to each.  Said schedule, when approved by the Owner, shall be controlling regarding any review of the Construction Manager's Applications for Payment."

§9.3    <u>Applications For Payment</u>.

§9.3.1    Add at the end of Subsection A.9.3.1 the following: "The Application For Payment shall be made on AIA Document G702, Application and Certificate For Payment (or Owner approved equivalent), supported by AIA Document G703, Continuation Sheet."

§9.3.1.3    Add new Subsection A.9.3.1.3 as follows:

"§9.3.1.3  By submitting an Application for Payment to the Owner, the Construction Manager shall be deemed to be certifying and representing to the Owner (except as to matters otherwise specified in such Application for Payment) that there are no known mechanics', materialmen's, or laborers' liens or claims, or any other liens or claims, legal or equitable, contractual, statutory, or otherwise outstanding or known to exist as of the date of such Application for Payment (except to the extent covered by and referenced in such Application for Payment); that all due and payable bills with respect to the Work and the materials incorporated into the Work have been paid to date or are included in the amount requested in such Application for Payment, and there is no known basis for the filing of any mechanics', materialmen's, or laborers' lien or claim or any other lien or claim, legal or equitable, contractual, statutory, or otherwise, on the Work done and materials furnished."

§9.3.2    Amend Subsection A.9.3.2 by adding the word "bonded" before the word "location" in the third line of such Subsection, and add at the end of Subsection A.9.3.2 the following: "All Work covered by partial payments shall be deemed the property of the Owner."

§9.3.3    Add at the end of Subsection A.9.3.3 the following: "The Construction Manager agrees to indemnify, defend, and hold harmless the Indemnitees from and against any liens, claims, security interests or encumbrances filed by the Contractors, or anyone claiming by, through or under the Construction Manager or the Contractors, provided that the Owner had made payments pursuant to this Contract. Nothing contained in this Section A.9.3 shall diminish the Construction Manager's responsibility to replace stolen, defective or vandalized Work, materials or equipment. The provisions of this Subsection A.9.3.3 shall be in addition to all other indemnity provisions contained in the Contract Documents, shall survive the termination or expiration of the Contract Documents, and shall not be limited in any way by the amount or type of insurance obtained by the Owner or the Construction Manager or any Contractor or material supplier at any tier."

§9.5.1    Add at the end of Section 9.5.1 the following: "If the Owner shall decline to make the payment requested in an Application for Payment because the Owner believes that the Work has not progressed to the point indicated in the Application for Payment, the quality of the Work is not in accordance with the Contract Documents or for any other reasons listed in Clauses .1 through .10 above, the Owner shall notify the Construction Manager. If the Construction Manager and the Owner cannot promptly agree on a revised amount, the Owner shall pay such amount as shall not be in dispute."

§9.5.4    Add new Subsection 9.5.4 as follows:

"§9.5.4  If the Construction Manager disputes any determination by the Owner not to make a payment, the Construction Manager shall nevertheless expeditiously continue to prosecute the Work."

§9.6    Progress Payments.

§9.6.1    Add at the end of Subsection 9.6.1 the following: "The Owner may refuse to make any payment set forth in an Application for Payment if the Owner reasonably determines that any of the conditions set forth in Subsection A.9.5.1 exist, and such refusal by the Owner shall not constitute a default under the Contract Documents."

§9.6.8    Add new Subsection 9.6.8 as follows:

"The Owner hereby reserves the right to issue joint checks to the Construction Manager and its Architect, Contractors or materialmen if the Owner deems such action appropriate or advisable."

§9.8    Substantial Completion.

§9.8.1    Delete the printed text of Subsection 9.8.1 and substitute the following:

"§9.8.1  Substantial Completion is the stage in the progress of the Work when all components of the Project to be fully completed and installed by the Construction Manager are operational as designed and scheduled, all occupancy permits (including an amended certificate of occupancy allowing the Owner to utilize the premises fully for the purpose intended) have been issued, all designated or required governmental inspections and certifications have been made, posted, and/or obtained, and all final finishes are complete and in place. The only remaining Work shall be minor in nature such that the Owner could occupy the Project for the purpose for which it was intended on that date and the completion of the Work by the Construction Manager would not interfere with or hamper the normal operation or the enjoyment of the Project by the Owner. As a further condition of Substantial Completion achievement, the Construction Manager shall certify that all remaining Work can and will be completed within thirty (30) consecutive calendar days following the date of Substantial Completion."

§9.9    Partial Occupancy Or Use.

§9.9.1    Add to the end of Subsection 9.9.1 the following:  "Nothing contained herein shall require the Owner to accept occupancy or use of less than the entirety of the Project prior to completion of the Work."

§9.10    Final Completion And Final Payment.

§9.10.6    Add new Subsection 9.10.6 as follows:

"§9.10.6 Final payment shall not be delayed for minor punch list Work or for incidental Contract Work; provided, however, the cost of completing such Work shall be reasonably determined by the Owner, and the Owner shall withhold two hundred percent (200%) of the cost of completing such Work from the amount of the final payment, which withheld amount shall be payable to the Construction Manager upon the Construction Manager's satisfactory completion of such Work. Further, a reasonable sum may be withheld until the Construction Manager delivers to the Owner record drawings and other items required and the warranties, instructions and maintenance manuals required to be furnished and a final statement of the cost of the work allocated in accordance with the budget and in a form which has been approved by the Owner's Financiers (if any) has been furnished."

§11.1 Construction Manager's Liability Insurance.

§A.11.1.3 Delete the printed text of Subsection 11.1.3 and substitute the following:

"§11.1.3 Minimum Requirements of Insurance. All insurance as described in Subsections 11.1.1, 11.1.2, 11.1.5, shall meet the following requirements.

.1 Certificates of Insurance in ACORD-27 form or other form acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and annually thereafter until the termination of the period for which such insurance is required hereunder. At the Owner's option, upon written notice to the Construction Manager, the Construction Manager shall provide certified copies of endorsements and policies to the Owner and shall replace certificates, policies and endorsements for any such insurance expiring prior to completion of the Work.

.2 All coverage shall be written by an insurer licensed in the State of New York with a Best Rating of A VIII or better.

.3 Certificates and the insurance policies required by this Section A.11.2 shall contain a provision that coverages afforded under the policies will not be cancelled or allowed to expire until at least thirty (30) days' prior written notice has been given to the Owner. The Certificate of Insurance for each policy must state that "the issuing company will mail thirty (30) days' written notice of cancellation or modification to the certificate holder." The phrases "endeavor to" and "failure to mail such notice shall impose no obligation for liability . . ." are unacceptable and these two phrases must be crossed out if they appear in the printed certificate form.

.4 The following entities shall be named as additional insureds on all insurance required under Subsection A.11.2.4 (except for the policies required by Subsection A.11.2.4.1): Owner, Owner's parent, affiliates and subsidiaries, Owner's architects, engineers, consultants and representatives, and the trustees, directors, officers, managers, members, and employees of all of them.

.5 If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing

E-12

continuation of such coverage shall be submitted with the final Application for Payment as required by Subsection A.9.10.2 and annually thereafter until the required coverage period expires.

.6  Information concerning reduction of coverage or limits shall be furnished by the Construction Manager with reasonable promptness in accordance with the Construction Manager's information and belief.

§11.1.5  Minimum Limits of Construction Manager's Liability Insurance.  Without limiting the generality of Subsection 11.1.1 above, as a minimum, the Construction Manager will purchase and maintain at its sole expense with companies satisfactory to the Owner, the following described insurance coverages:

.1  Workers' Compensation and Employer's Liability.  This statutory coverage be furnished as required by the laws of the State of New York and to further include:  State of New York Act Coverage and Voluntary Compensation Coverage with statutory limits for Workers' Compensation and limits for Employer's Liability of:  $1,000,000;  Each Accident;  $$1,000,000Disease - Policy Limited;  and  $$1,000,000  Disease - Each Employee.  Such policy shall contain an endorsement providing a waiver of subrogation in favor of the Owner and its employees.

.2  Commercial General Liability.  This policy shall be on Occurrence Form and include coverage for:  (a) Premises Operations;  (b) Independent Construction Managers;  (c) Products and Completed Operations;  (d) Broad Form Property Damage;  (e) Blanket Contractual Liability;  (f) Personal Injury;  (g) Employees Named as Additional Insureds;  (h) Explosion, Collapse and Underground Property Damage;  and  (i) Severability of Interest.  Limits for such coverage shall be:  (1) Bodily Injury and Property Damage Combined Single Limit:  $3,000,000 per occurrence;  $6,000,000 general aggregate;  and $6,000,000 products-completed operations aggregate;  and  (2) Personal Injury limits shall be $3,000,000 per occurrence and $6,000,000 general aggregate.  The policy shall further contain an endorsement which states that the limits apply exclusively to the Project.

The Construction Manager's policy shall be specifically endorsed to state that with respect to any contractual obligation of the named insured to provide liability insurance to Owner, the policy shall be considered to be part of an unbroken chain of primary and excess liability insurance which shall apply to any loss or claim before any contribution by the Owner.  The products and completed operations coverage, which is part of the Commercial General Liability policy, must be carried for two (2) years after completion of the Work.  The Construction Manager shall continue to provide evidence of such coverage on an annual basis.

.3  Automobile Liability.  Automobile Liability shall include coverage for all owned, non-owned, hired autos and automobile contractual liability, with limits of: $1,000,000 per Person/$1,000,000 per Accident - Bodily Injury;  $1,000,000 per

E-13

Accident - Property Damage; and Basic No-Fault coverage as required by New York law.

.4 Umbrella Liability. The Umbrella Liability policy shall be excess over the Commercial General Liability, Automobile Liability, and Employer's Liability policies. The Umbrella Liability policy shall be on Occurrence Form with a limit of liability of $25,000,000 and a Self-Insured Retention of not more than $750,000.

The Construction Manager's policy shall be specifically endorsed to state that it is primary insurance using the same required wording as specified for the endorsement to the Commercial General Liability policy above in Subsection A.11.2.4.2.

The policy may not exclude punitive damages or claims arising out of discrimination other than employment related discrimination. All exclusions endorsed onto the policy are to be shown on the Certificate of Insurance and a copy of the exclusion attached thereto. The Construction Manager shall continue to provide evidence of such coverage on an annual basis."

§11.2    Owner's Liability Insurance.

§11.2    Add at the end of Subsection 11.2 the following: "This insurance shall be in excess of and shall not contributory with any insurance coverage available to the Owner under the Construction Manager's insurance as required by Article 11."

§12.2.2    After Substantial Completion.

§12.2.2.1    Delete the word, "promptly," from the sixth sentence of Subsection 12.2.2.1.

§13.4    Rights and Remedies.

§13.4.3    Add new Subsection 13.4.3 as follows:

"§13.4.3  During the course of all disputes, actions, claims and other matters in question arising out of, or relating to, this Contract, or the breach hereof, the Construction Manager shall carry on the Work and maintain the progress schedules, unless otherwise agreed to by the Construction Manager and the Owner in writing, provided, that the Owner shall continue to make payments of all undisputed sums due the Construction Manager under the Contract."

§13.5    Tests and Inspections.

§13.5.2    Add at the end of Subsection A13.5.2 the following: "When Work has been installed contrary to any The Contract requirements and the Construction Manager requests the privilege of testing in lieu of removal, such testing shall be at the Construction Manager's expense."

§14.1    Termination by the Construction Manager.

E-14

§14.1.1.4   Delete the printed text of Clause 14.1.1.4.

§14.1.3   Delete the clause, "including reasonable overhead, profit and damages," at the end of Subsection 14.1.3 and substitute the following: "including reasonable overhead and profit to the date of termination."

§14.2   <u>Termination by the Owner for Cause.</u>

§14.2.1.3   Delete the word "repeatedly" from Clause A.14.2.1.3.

§14.2.1.4   Delete the printed text of Clause 14.2.1.4 and add the following new Clauses 14.2.1.4, 14.2.1.5, 14.2.1.6, 14.2.1.7, and 14.2.1.8:

".4  fails to perform in a timely manner;

.5  fails to comply with the Contract Documents;

.6  at any time there shall be filed by or against the Construction Manager in any court, a petition for bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of the Construction Manager's property and within thirty (30) days therefrom the Construction Manager fails to secure a discharge thereof;

.7  if the Construction Manager makes an assignment for the benefit of creditors or petitions for or enters into an arrangement; or

.8  otherwise breaches or violates a provision of the Contract Documents."

§14.2.2   Delete the last sentence of Clause 14.2.2.3.

§14.2.4   Delete the printed text of Subsection 14.2.4 and substitute the following:

"§14.2.4  If the unpaid balance of the Contract Sum exceeds all costs to the Owner of completing the Work, then the Construction Manager shall be paid for all Work performed by the Construction Manager to the date of termination. If such costs to the Owner of completing the Work exceed such unpaid balance, the Construction Manager shall pay the difference to the Owner immediately upon the Owner's demand. The costs to the Owner of completing the Work shall include but not be limited to the cost of any additional architectural, managerial, and administrative services required thereby, any costs incurred in retaining another contractor or other subcontractors, any additional interest or fees which the Owner must pay by reason of delay in completion of the Work, attorneys' fees and expenses, and any other damages, costs, and expenses the Owner may incur by reason of completing the Work or any delay thereof."

§14.5   <u>Post Termination.</u>

§14.5.1   Add new Subsection 14.5.1 as follows:

E-15

"§14.5.1    Notwithstanding anything to the contrary herein, in the event of any termination, or in the event of the scheduled expiration of the time of performance specified in the Contract, all finished or unfinished documents, reports, summaries, lists, charts, graphs, maps or other material prepared by the Construction Manager and all discoveries, inventions or developments produced in whole or in part under the Contract shall, at the option of the Owner, become the Owner's property and, together with all information, data, reports, records, maps and other materials (if any) provided to the Construction Manager by the Owner shall be delivered and surrendered to the Owner on or before the expiration date or date of termination. All equipment and unused supplies and materials leased or purchased with funds paid to the Construction Manager under the Contract shall become the property of the Owner as the Owner so specifies and shall be disposed of as directed by the Owner. In the final settlement of the Contract, the Owner shall review the final expenditure report of the Construction Manager and shall determine the amount of unexpended and unobligated funds to be refunded to the Owner, if any, by Construction Manager. For termination of any type, any other provision to the contrary notwithstanding, the Construction Manager shall not be relieved of liability to the Owner for damages sustained because of any breach by the Construction Manager of the Contract or negligence or other fault on the part of the Construction Manager."

[remainder of page intentionally left blank]

E-16